ACCEPTED
15-25-00122-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
1/9/2026 4:22 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00122-CV

IN THE COURT OF APPEALS
FOR THE FIFTEENTH DISTRICT OF TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
1/9/2026 4:22:37 PM
CHRISTOPHER A. PRINE
Clerk

STATE OF TEXAS, MAXX JUUSOLA, TRACY MARTIN, AND ALAN CRIDER

*Appellants,*

v.

CITY OF DALLAS, KIMBERLY BIZOR TOLBERT, IN HER OFFICIAL CAPACITY AS THE
INTERIM CITY MANAGER FOR THE CITY OF DALLAS, AND
THE STATE FAIR OF TEXAS,

*Appellees.*

From the 298th District Court, Dallas County,
Cause No. DC-24-14434, Hon. Emily Tobolowsky, Presiding

BRIEF OF THE CITY APPELLEES

Jeffrey M. Tillotson
Anne M. Johnson
Jonathan R. Patton
Nathaniel D. Buchheit
Joseph Austen Irrobali
Megan M. Coker
**TILLOTSON JOHNSON & PATTON**
1201 Main St., Suite 1300
Dallas, Texas 75202
Phone: (214) 382-3041

*Attorneys for Appellees the City of Dallas and
Kimberly Bizor Tolbert, in her official capacity as the
City Manager for the City of Dallas*

## IDENTITY OF PARTIES AND COUNSEL

Trial and appellate counsel for Appellees the City of Dallas and Kimberly Bizor

Tolbert, in her official capacity as the City Manager for the City of Dallas[1] are:

Jeffrey M. Tillotson
   State Bar No. 20039200
   jtillotson@tillotsonlaw.com
Anne M. Johnson
   State Bar No. 00794271
   ajohnson@tillotsonlaw.com
Jonathan R. Patton
   State Bar No. 24088198
   jpatton@tillotsonlaw.com
Nathaniel D. Buchheit
   State Bar No. 24119200
   nbuchheit@tillotsonlaw.com
Joseph Austen Irrobali
   State Bar No. 24092564
   airrobali@tillotsonlaw.com
Megan M. Coker
   State Bar. No. 24087323
   mcoker@tillotsonlaw.com
**TILLOTSON JOHNSON & PATTON**
1201 Main St., Suite 1300
Dallas, Texas 75202
Phone: (214) 382-3041

---

[1] Ms. Tolbert was originally sued in her official capacity as the City's "interim" City Manager. Her "interim" status was removed in January 2025. State's Br. at 3 n.1.

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ............................................................ 2

TABLE OF AUTHORITIES ................................................................................. 5

ABBREVIATIONS AND RECORD REFERENCES ........................................... 8

STATEMENT OF THE CASE ............................................................................. 9

STATEMENT REGARDING ORAL ARGUMENT ........................................... 10

ISSUES PRESENTED ...................................................................................... 11

INTRODUCTION ............................................................................................. 12

STATEMENT OF FACTS ................................................................................. 14

     A.    The Fair is a private, ticketed event held annually by SFOT. .................. 14

     B.    SFOT operates the Fair pursuant to an arm's-length Agreement with the City, and SFOT controls Fair policies. ........................................ 15

     C.    After a shooting at the 2023 Fair, SFOT implemented a weapons policy for the 2024 Fair without any City input. ..................................... 16

     D.    The Attorney General briefly purported to investigate SFOT's Policy, then sued SFOT and the City Appellees under Texas Government Code § 411.209. ...................................................................... 17

     E.    The trial court denied Appellants' request for a temporary injunction, and this Court and the Supreme Court promptly denied the State's emergency requests for similar relief. ...................................... 19

     F.    Back in trial court, the parties cross-moved for summary judgment, and the trial court dismissed Appellants' claims. ...................................... 22

     G.    Only the State filed an appellate brief, which raises only a narrow subset of issues related to the State's Section 411.209 claims. ................. 23

SUMMARY OF THE ARGUMENT ................................................................... 23

ARGUMENT .................................................................................................... 26

I.    Legal Standards. ...................................................................................... 26

     A.    Standards of review. ................................................................................ 26

     B.    Subject matter jurisdiction. ..................................................................... 27

C.     Rules of statutory interpretation.................................................... 28

II.     The trial court lacked subject matter jurisdiction................................. 29

     A.     There was no jurisdiction over the Individual Appellants' claims because Section 411.209 contains no private right of action, and they did not follow its mandatory procedures, in any event.................... 29

     B.     There was no jurisdiction over the State's claims, either, because the statutory prerequisites to suit were not satisfied. ............................... 32

     C.     The City Appellees also have sovereign/governmental immunity from these claims....................................................................................... 39

III.     As a matter of law, the City did not violate Section 411.209. It took no relevant action at all. ................................................................................. 41

     A.     The City took no action with respect to SFOT's Policy. ......................... 42

     B.     SFOT's actions cannot be imputed to the City. ....................................... 43

         i.     The City's entry into the Agreement (in 2003) did not violate Section 411.209 (enacted in 2015) and neither stated nor implied anything about SFOT's Policy (adopted in 2024)............ 44

         ii.     The City never "implicitly ratified" SFOT's Policy or communication thereof, either........................................................ 47

     C.     This Attorney General's analysis of Section 411.209 in Opinion KP-0108 confirms that there is no violation here..................................... 51

     D.     The State also has no answer to the Fifth Circuit's rejection of arguments materially identical to the State's. .............................................. 56

IV.     The trial court correctly excluded the State's evidence concerning a prior incident regarding a different policy under a different statute. .......................................... 57

V.     Appellants have waived the vast majority of the issues in this case. ................... 60

CONCLUSION AND PRAYER............................................................................. 63

CERTIFICATE OF COMPLIANCE ..................................................................... 65

CERTIFICATE OF SERVICE ............................................................................... 66

APPENDIX............................................................................................................. 67

**Page(s)**

**Cases**

*Anderson v. G & S Auto of Fort Worth VI, LLC,*
No. 02-25-00063-CV, 2025 WL 3039141 (Tex. App.—Fort Worth
Oct. 30, 2025, no pet. h.) ................................................................................. 29, 61

*BPX Operating Co. v. Strickhausen,*
629 S.W.3d 189 (Tex. 2021) ................................................................................. 48

*Burns v. City of San Antonio by & Through City Pub. Serv. Bd. of San Antonio,*
712 S.W.3d 194 (Tex. App. [15th Dist.] 2025, pet. filed) ................................ 26, 27

*Carson v. Blue Cross Blue Shield of Tex., Inc.,*
No. 15-24-00108-CV, 2025 WL 3672580 (Tex. App. [15th Dist.] Dec.
18, 2025, no pet. h.) .......................................................................................... 28, 29

*Chambers-Liberty Cntys. Nav. Dist. v. State,*
575 S.W.3d 339 (Tex. 2019) ................................................................................. 39

*City of Ingleside v. City of Corpus Christi,*
469 S.W.3d 589 (Tex. 2015) .............................................................................. 27, 29

*City of McKinney v. Hank's Rest. Grp., L.P.,*
412 S.W.3d 102 (Tex. App.—Dallas 2013, no pet.) ............................................ 29

*Crosstex Energy Servs., L.P. v. Pro Plus, Inc.,*
430 S.W.3d 384 (Tex. 2014) .............................................................................. 28, 37

*Dall. Area Rapid Transit v. Whitley,*
104 S.W.3d 540 (Tex. 2003) .............................................................................. 28, 29

*Dall. Med. Ctr., LLC v. Molina Healthcare of Tex., Inc.,*
No. 05-19-01583-CV, 2021 WL 5071830 (Tex. App.—Dallas Nov. 2,
2021, pet. denied) ................................................................................................ 27

*Davis v. Hendrick Autoguard, Inc.,*
294 S.W.3d 835 (Tex. App.—Dallas 2009, no pet.) ............................................ 31

*Eriksen v. Nelson,*
708 S.W.3d 302 (Tex. App. [15th Dist.] 2025, no pet.) ...................................... 61

*Ernie Wells et al. v. MSW 1221 South Lamar, LLC et al.*,
No. 05-23-01288-CV, 2025 WL 3055622 (Tex. App.—Dallas Oct. 31,
2025, no pet. h.) ...................................................................................... 60, 61

*Fossil Grp., Inc. v. Harris*,
691 S.W.3d 874 (Tex. 2024) ............................................................................ 40

*Hall v. McRaven*,
508 S.W.3d 232 (Tex. 2017) ............................................................................ 39

*Holcomb v. Waller Cnty.*,
546 S.W.3d 833 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) .................... 30

*Keenan v. Robin*,
709 S.W.3d 595 (Tex. 2024) ....................................................................... 26, 27

*Kelley v. Homminga*,
706 S.W.3d 829 (Tex. 2025) (per curiam) ...................................................... 35

*Legacy Hutto, LLC v. City of Hutto*,
687 S.W.3d 67 (Tex. 2024) (per curiam) ........................................................ 44

*Liberal Mut. Ins. Co. v. Adcock*,
412 S.W.3d 492 (Tex. 2013) ............................................................................ 51

*Millstone Inv. & Mgmt., L.L.C. v. BNC Retax, L.L.C.*,
410 S.W.3d 869 (Tex. App.—Houston [14th Dist.] 2013, no pet.).................... 35, 36

*Morris v. Pearson Dental Supplies, Inc.*,
657 S.W.3d 677 (Tex. App.—Houston [14th Dist.] 2022, no pet.)........................ 35

*Rundus v. City of Dallas*,
634 F.3d 309 (5th Cir. 2011) ..................................................................... 56, 57

*Silguero v. CSL Plasma, Inc.*,
579 S.W.3d 53 (Tex. 2019)............................................................................... 28

*In re State*,
698 S.W.3d 904 (Tex. 2024) ...................................................................*passim*

*Stringfellow v. Tex. Dep't of Pub. Safety*,
No. 15-24-00024-CV, 2025 WL 996361 (Tex. App. [15th Dist.] Apr.
3, 2025, pet. denied)............................................................................... 60, 61

*Tex. Dep't of Pub. Safety v. Saintes*,
No. 15-24-00092-CV, 2025 WL 1710798 (Tex. App. [15th Dist.] June
19, 2025, no pet.) ........................................................................... 26

*Tex. Disposal Sys. Landfill, Inc. v. Travis Cent. Appraisal Dist.*,
694 S.W.3d 752 (Tex. 2024), ............................................ 27, 28, 29, 39

*Tex. Mut. Ins. Co. v. Ruttiger*,
381 S.W.3d 430 (Tex. 2012) ................................................................ 28

*TotalEnergies E&P USA, Inc. v. MP Gulf of Mex., LLC*,
667 S.W.3d 694 (Tex. 2023) ................................................................ 35

*Waller Cnty. v. Paxton*,
No. 07-22-00034-CV, 2022 WL 3449497 (Tex. App.—Amarillo Aug.
17, 2022, no pet.) ..................................................................... 40, 49

## Statutes and Rules

42 U.S.C. § 1983 ................................................................................ 56, 57

TEX. CIV. PRAC. & REM. CODE § 90.004 ................................................ 35

TEX. CODE CRIM. PROC. art. 2.1305 ...................................................... 58

TEX. GOV'T CODE § 311.034 ............................................................ 27, 29

TEX. GOV'T CODE § 411.209 ........................................................... *passim*

TEX. HEALTH & SAFETY CODE § 552.002 ................................................ 41

TEX. PENAL CODE § 46.03 ..................................................................... 41

TEX. TAX CODE § 32.06 ................................................................... 35, 36

TEX. R. APP. P. 38.1(f)-(i) ............................................................ *passim*

## Other Authorities

*Action*, BLACK'S LAW DICTIONARY (12th ed. 2024) ................................ 47

## ABBREVIATIONS AND RECORD REFERENCES

**Parties and Key Materials:**

The "***City***" refers to Appellee the City of Dallas.

The "***City Appellees***" refers to Appellees the City and Kimberly Bizor Tolbert, in her official capacity as the City Manager for the City of Dallas, collectively.

The "***State***" refers to Appellant the State of Texas.

"***SFOT***" refers to Appellee the State Fair of Texas.

The "***Individual Appellants***" refers to Appellants Maxx Juusola, Tracy Martin, and Alan Crider, collectively.

"***Section 411.209***" refers to TEX. GOV'T CODE § 411.209.

"***KP-0108***" refers to Opinion KP-0108 of the Texas Attorney General, Att'y Gen. Op. KP-0108, 2016 WL 4267994 (2016).

"***Agreement***" and "***Fair Park Contract***" refer to SFOT's contractual lease agreement with the City, including amendments thereto, located at SCR497-576.

**Record References**:

The Brief of the State of Texas (filed Oct. 23, 2025) is cited as "State's Br." and referred to as the "State's Brief."

The Reporter's Record is cited as "RR[page]."

The Clerk's Record is cited as "[volume number]CR[page]."

The Supplemental Clerk's Record is cited as "SCR[page]."

**Appendix Citations:**

Documents in the Appendix to this Brief are cited as "App. [Tab]."

## STATEMENT OF THE CASE

**Nature of the Case:** This case arises out of Appellee SFOT's adoption and communication of a new policy in 2024 prohibiting most fairgoers from carrying firearms into the State Fair of Texas (the "Policy"). The Fair is a private, ticketed event operated by SFOT, which is a private entity that leases the fairgrounds from the City. Appellants the State and three individuals sued SFOT and the City under Texas Government Code § 411.209, alleging that SFOT's Policy and communication thereof constituted a prohibited "action" by "a political subdivision of the state," *i.e.*, the City. Appellants sought civil penalties and declaratory and injunctive relief. 1CR271-88.

**Trial Court:** Hon. Emily G. Tobolowsky, 298th Judicial District Court, Dallas County, Texas.

**Temporary Injunction Proceedings:** After reviewing the parties' briefing and holding an evidentiary hearing, the trial court denied Appellants' application for a temporary injunction. 1CR192. The State appealed that denial and filed an emergency motion for temporary injunctive relief in this Court, which the Court denied. 1CR193; Order, *State v. City of Dallas, et al.*, No. 15-24-00103-CV (Tex. App. [15th Dist.] Sept. 24, 2024). The State then filed a petition for writ of mandamus and emergency motion for temporary relief from the Supreme Court of Texas, which the court denied. 1CR214-15. Now-Chief Justice Blacklock, joined by then-Chief Justice Hecht and Justice Young, wrote a concurring opinion. *Id.*; App. F, *In re State*, 698 S.W.3d 904 (Tex. 2024) (Blacklock, J. concurring). The State then dismissed its accelerated appeal from the denial of the temporary injunction in this Court. 1CR265-69.

**Summary Judgment Proceedings:** After the State dropped its accelerated appeal from the denial of the temporary injunction, the parties cross-moved for summary judgment, with the City Appellees seeking both traditional and no-evidence summary judgment. 1CR301-34; 1CR335-62; 1CR363-503, SCR4-581. After reviewing the parties' briefing and evidence and holding another hearing, RR1-59, the trial court granted the City Appellees' motion, granted SFOT's motion, denied Appellants' motion, and dismissed Appellants' claims with prejudice. App. A; App. B; App. C. All Appellants filed notices of appeal, but only the State filed an appellate brief.

9

## STATEMENT REGARDING ORAL ARGUMENT

The City Appellees respectfully request to participate in oral argument if the Court would find oral argument helpful. However, the City Appellees also respectfully submit that the Court can affirm the trial court without conducting oral argument.

This case is straightforward, the parties agree there is no factual dispute, and this is the second time this case and these issues are before this Court, with the State having sought temporary injunctive relief in the trial court, this Court, and the Supreme Court in 2024. All three courts denied the State that relief, the facts and the law are the same now as they were then, and the State's arguments in this appeal are narrower and no more compelling or supported than they were then. The briefing, alone, makes clear that the trial court correctly dismissed the State's case, and its decision should be affirmed.

## ISSUES PRESENTED

After the trial court, this Court, and the Supreme Court denied the State temporary injunctive relief in 2024, the trial court granted summary judgment to the City Appellees and SFOT, and denied it to Appellants.

1.     Does any one of the following independent grounds support affirming those summary-judgment decisions under Texas Government Code § 411.209?

    a.     Did Appellants establish that the court had subject matter jurisdiction over their claims?

        i.     Did the Individual Appellants lack standing, where Section 411.209 confers no private right of action and they failed to satisfy the statutory conditions precedent for submitting even a "complaint" to the Attorney General?

        ii.     Did the State's failure (and inability) to establish satisfaction of those statutory conditions precedent also deprive the trial court of jurisdiction over the State's claims, which are predicated on such citizen "complaints?"

        iii.     Regardless, did Appellants plead and prove a valid waiver of the City Appellees' sovereign/governmental immunity from suit?

    b.     Did Appellants present evidence raising even a genuine fact dispute that the City Appellees took "any action … that states or implies that a license holder who is carrying a handgun … is prohibited from entering or remaining on a premises or other place owned or leased by the governmental entity," TEX. GOV'T CODE § 411.209(a), regarding SFOT's challenged admissions Policy for the 2024 State Fair?

    c.     Did the City Appellees conclusively establish the absence of any such "action" when the undisputed evidence demonstrates that the Policy was developed, adopted, enforced, and communicated by SFOT, and the City Appellees had no control or influence over any of that?

2.     Did the trial court abuse its discretion by excluding from evidence three letters that predate SFOT's challenged Policy by over a year, do not address that Policy, concern an entirely different statute, and, if anything, reaffirm that SFOT is a separate entity over which the City exercises no relevant control?

11

# INTRODUCTION

The trial court correctly rejected Appellants' efforts to stretch Texas Government Code § 411.209 into holding the City Appellees liable for SFOT's adoption and communication of SFOT's admissions policy for SFOT's private, ticketed event (the 2024 State Fair of Texas).

Appellants sued SFOT and the City Appellees under Section 411.209 after SFOT adopted and announced on SFOT's website a new policy prohibiting most fairgoers from carrying firearms at the Fair (the "Policy"). But Section 411.209 only prohibits "a state agency or a political subdivision of the state [from] tak[ing] any action … that states or implies that a license holder who is carrying a handgun … is prohibited from entering or remaining on a premises … owned or leased by the governmental entity[.]" TEX. GOV'T CODE § 411.209(a). The statute also only allows the State to sue for uncured violations of that prohibition, and then only when certain express statutory prerequisites have been satisfied. *Id.* § 411.209(d)-(g). Those statutory provisions doomed Appellants' claims in multiple ways, supporting summary judgment for the City Appellees and the dismissal of Appellants' fatally flawed claims.

At the outset, Appellants failed to establish subject matter jurisdiction. The absence of any private right of action in Section 411.209 disposes of the Individual Appellants' claims—an issue they have never disputed—as does their failure to challenge the dismissal of their claims on appeal. Nor do Appellants dispute that Section 411.209's statutory prerequisites to suit are jurisdictional. State's Br. at 13. That is fatal,

12

too, because those prerequisites undisputedly were not satisfied here. Meanwhile, Appellants neither pleaded nor proved any waiver of the City Appellees' undisputed sovereign/governmental immunity, which provides yet another ground for affirming the trial court's dismissal of Appellants' claims on jurisdictional grounds.

Their claims fare no better on the merits. Although the City owns the fairgrounds, the City is not SFOT, and SFOT is not a state agency or political subdivision. Rather, SFOT is a private, nonprofit entity that leased and had exclusive control of the fairgrounds throughout the entire time the Policy was in effect. That entitled the City Appellees to summary judgment because Appellants' claims only challenged **SFOT's** adoption and **SFOT's** communication, on **SFOT's** website, of **SFOT's** Policy for **SFOT's** private, ticketed event on property **SFOT** exclusively controlled. The record conclusively and uniformly establishes that the City Appellees had no control or influence over the substance, adoption, or communication of SFOT's Policy.

That squarely removes this case from the plain language of Section 411.209(a). And it speaks volumes and remains dispositive that—despite SFOT and the City Appellees raising those same points repeatedly in the 2024 temporary injunction proceedings (including before this Court and the Supreme Court)—Appellants still cannot identify **any** action by the City Appellees stating or implying that any license holder is prohibited from entering or remaining in the fairgrounds.

13

Instead, the State—the only Appellant to file an appellate brief—continues to urge that Section 411.209(a) prohibits **inaction** by the City when a private lessee adopts or communicates a new policy like SFOT's. As this same Attorney General's longstanding, published opinion confirmed, the Legislature chose the opposite approach in Section 411.209(a) by prohibiting only a governmental entity's "**action**." *See* App. E (Opinion KP-0108); TEX. GOV'T CODE § 411.209(a) (emphasis added). The statute simply does not address a private lessee's policy and communication thereof.

The State has not presented any new facts, law, or arguments since the trial court, this Court, and the Supreme Court declined to award the State even temporary injunctive relief. The unchanged facts, law, and arguments certainly did not entitle the State to summary judgment, nor do they now establish any error in the trial court's denial of that relief to the State and grant of judgment to the City Appellees. This Court should affirm.

## STATEMENT OF FACTS

### A. The Fair is a private, ticketed event held annually by SFOT.

Although the City owns Fair Park, where the State Fair of Texas is held every year, the Fair is and always has been a private event, operated exclusively by Appellee SFOT. SCR94-95, 105-07, 132-33.[2] SFOT is a private nonprofit corporation, governed

---

[2] SFOT's control over the Fair is so exclusive that it could even rename the iconic "Big Tex" as "Big Yankee" if it wished. The City would have no input or control over that decision. SCR133.

by its own board of directors. SCR96-97. No City employees, officials, or appointees sit on SFOT's board, nor does the City exercise any meaningful control over SFOT. SCR96-97, 112-15, 132-33. The City does not develop, communicate, enforce, adopt, or otherwise have anything to do with the policies SFOT chooses to implement for the Fair, including policies concerning what fairgoers may carry into the Fair. SCR96-97, 112-15, 132-33.

Among other consideration, SFOT pays the City rent in exchange for SFOT's limited-duration use of Fair Park, but the City makes no payments to SFOT. SCR102-03. And while police officers work at the Fair, those officers are responsible only for enforcing applicable laws and ordinances, not SFOT's policies, and are paid by SFOT, not the City, for their work at the Fair. SCR87, 105-06. 116-18.

**B.    SFOT operates the Fair pursuant to an arm's-length Agreement with the City, and SFOT controls Fair policies.**

SFOT operates the Fair pursuant a contractual lease Agreement with the City. SCR497-576. The Agreement and amendments thereto have always been negotiated at arm's length, with SFOT and the City each seeking to protect and further its own respective, independent interests. SCR130-32.

The Agreement explicitly excludes some areas of Fair Park, including "Cultural Facilities" like the Music Hall (which is separately leased to a distinct third party). SCR89, 100-101; SCR502, 506, 524. Otherwise, the Agreement provides that, in exchange for rent and other fee payments, SFOT has exclusive rights to occupy most

of Fair Park for 24 days each fall,[3] and operate the Fair there during that period. SCR502. As lessee and occupier during that period, SFOT also has the exclusive authority to decide whom to admit, carrying what, into the private, ticketed event SFOT holds there (the Fair). SCR98, 106-11.

### C. After a shooting at the 2023 Fair, SFOT implemented a weapons policy for the 2024 Fair without any City input.

SFOT develops its own admissions policy and code of conduct for fairgoers, and SFOT does not admit fairgoers who refuse to follow SFOT's policies and code of conduct. SCR107-14. The City plays no role in that process. SCR107-08, 112-14.

In February 2024, SFOT decided that its code of conduct would include the new Policy prohibiting patrons from carrying firearms into the Fair. SCR112-14. SFOT had its own, internal reasons for adopting that Policy (including a shooting at the 2023 Fair). SCR112-14. No one from the City was involved in the decision-making process, nor did the City imply or direct that SFOT should adopt the Policy. SCR110-15, 132. SFOT did not even inform the City of the Policy until May 2024. SCR114. Even then, SFOT only informed the Dallas Police Department, not the City Council. SCR114.

SFOT communicated the Policy on SFOT's own website, again without any City control, input, influence, or support. SCR43-45, 110; SCR220; SCR577-79. SFOT has

---

[3] The Agreement also allows SFOT to possess and limit public access to some areas of Fair Park for 60 days before and 30 days after the Fair to install and remove Fair fixtures. SCR502. Those periods are not at issue because SFOT's Policy was only in effect during the 24 days the Fair was in operation. SCR100, 106, 112.

never represented that its Policy is a City policy, nor that the City endorses, adopts, or otherwise takes any position on the Policy. SCR112-14, 133-34; SCR577-79. The City has not communicated, endorsed, adopted, or otherwise taken any position on SFOT's Policy. SCR133-34; SCR222-26.

D. **The Attorney General briefly purported to investigate SFOT's Policy, then sued SFOT and the City Appellees under Texas Government Code § 411.209.**

Around August 8, 2024, the Attorney General's Office received several inquiries from individuals about the SFOT Policy. SCR43-44; SCR201-18 (the inquiries). Only one of those inquiries was from an Individual Appellant (Maxx Juusola). SCR201-18. And despite the webform used to submit the inquiries expressly requiring "Evidence [that the] Subject of [the] Complaint Received Notice of [the alleged] Violation," none of the inquiries provided any such evidence:



### Section 4 - Evidence

**Sign Description**
https://bigtex.com/faqs/can-i-bring-any-weapons-into-the-fair/

**Photo of the Sign**
{Empty}

**Evidence Subject of Complaint Received Notice of Violation**
{Empty}

SCR201-18; *see also* SCR67, 73-74 (State's investigator confirming same).

Indicating who the State thought controlled the Policy and communication thereof, the Attorney General's investigator contacted SFOT, and not the City, about

17

these inquiries. SCR60-64, 66. The only statement about SFOT's Policy that the investigator identified was SFOT's description of the Policy on SFOT's website. SCR43-46; SCR201-18. The investigator testified that he reviewed the Agreement and found SFOT's relationship with the City to be something other than "arm's-length," though he could not identify anything in the Agreement supporting that belief, and his other allegations about the City paying its police officers to enforce SFOT's policies, revenue sharing, and so forth, were disproven. SCR80-91, 106. Nonetheless, within five days of receiving the individual inquiries and despite allegedly reviewing the Attorney General's Opinion KP-0108 and considering the information SFOT provided, the investigator recommended that the Attorney General pursue this case. SCR80-91, SCR62-63.

On August 13, 2024, the Attorney General's Office sent the City a "Notice of Wrongful Exclusion of Handgun License Holders at Fair Park" invoking Section 411.209. SCR220-21. The City responded and provided many reasons SFOT's Policy and communication thereof is not a violation of Section 411.209(a). SCR222-26. On August 29, 2024, the Attorney General nonetheless filed this lawsuit against SFOT, the City, and the City's City Manager under Section 411.209(g). 1CR14-26. A few weeks later, the State amended its petition to add the three Individual Appellants as plaintiffs, asserting various substantive claims and requesting a temporary injunction. 1CR29-50; 1CR77-84.

The City Appellees and SFOT filed responses in opposition to Appellants' application for a temporary injunction, and the City Appellees also filed a plea to the jurisdiction. 1CR99-118; 1CR119-59; 1CR178-91.

### E. The trial court denied Appellants' request for a temporary injunction, and this Court and the Supreme Court promptly denied the State's emergency requests for similar relief.

The trial court held a temporary injunction hearing on September 19, 2024.[4] SCR7-8. The Individual Appellants neither testified nor presented any evidence, and the State presented only one witness—the investigator discussed above. SCR10, 39-91. The State presented no evidence that the City has ever had any control over SFOT's Policy or related communications. SCR39-91.

In contrast, SFOT presented live testimony from SFOT's President, who reiterated that the Fair is a private event held by SFOT on property it happens to lease from the City; the City has no participation in, input on, or authority over SFOT's policies for the Fair, including the Policy challenged here; the City does not enforce SFOT's policies, including this one; and, during the Fair, SFOT has exclusive possession of and control over the leased fairgrounds, pursuant to the Agreement.

---

[4] The Attorney General "withdrew" KP-0108 the day before the original hearing date. 1CR53; SCR454. The Attorney General's website states that it was withdrawn "pending issuance of RQ-0558-KP," which was a separate request filed in 2024 by two state legislators. *See* KP-0108, https://www.texasattorneygeneral.gov/opinions/ken-paxton/kp-0108 (last accessed Jan. 8, 2026); 2CR762-63; 2CR892. The Attorney General declined to respond substantively to RQ-0558-KP in February 2025. 2CR781. No other opinion has been issued to replace KP-0108.

SCR96-114, 132-34. SFOT's President further confirmed that the City had no input in, nor indicated endorsement or support for, nor implied any ratification of SFOT's Policy. SCR101-02, 133-34. SFOT, alone, adopted and communicated the Policy. SCR113-14.

The trial court denied Appellants' request for a temporary injunction. 1CR192. The State appealed to this Court and filed a motion for emergency injunctive relief, effectively asking the Court to enter the temporary injunction the trial court denied. 1CR193; State's Emerg. Mot. for Relief Pending Appeal, *State v. City of Dallas, et al.*, No. 15-24-00103-CV (Tex. App. [15th Dist.] Sept. 20, 2024). The State's arguments there were broader but otherwise virtually identical to the ones it raises again in this appeal. *Compare id. with* State's Br. The City Appellees and SFOT filed responses opposing that injunctive relief, and this Court denied the State's motion. *See* Order, *State v. City of Dallas, et al.*, No. 15-24-00103-CV (Tex. App. [15th Dist.] Sept. 24, 2024).

The State then filed a petition for writ of mandamus in the Supreme Court challenging this Court's decision, plus another emergency motion for the same temporary relief, on the same grounds. *See* Relator's Emerg. Mot. for Temp. Relief, *In re State*, No. 24-0813 (Tex. Sept. 25, 2024). The Supreme Court promptly denied the State's motion and petition. *See* 1CR214.

Now-Chief Justice Blacklock, joined by then-Chief Justice Hecht and Justice Young, issued a concurring opinion identifying some of the most fundamental flaws in the State's case:

20

Remarkably, the State's presentation to this Court *takes no position* on whether the State Fair of Texas, a private entity, has the legal authority to exclude patrons carrying handguns from the Fair. This may surprise many observers, given that the ostensible purpose of this litigation is to determine whether Texas law entitles law-abiding Texans to carry handguns at the State Fair despite the Fair's recently enacted policy to the contrary.

…

[Instead,] [t]he State … insinuat[es] that the State Fair's gun policy is actually the City's policy. Even accepting the State's factual allegations as true … the allegations that the City controls the Fair amount only to scattered and indeterminate financial connections between the entities, not the kind of control that would make the State Fair's decisions about guns imputable to the City.

…

[A]t this stage, every indication is that the State Fair's private board made its own decision to prohibit guns at [the 2024] Fair. It should go without saying—though perhaps it cannot be said often enough—that a judge's role in this case is not to decide whether the State Fair made a wise decision. Our job, instead, is to decide whether Texas law allowed the State Fair to make the decision for itself. The State declines to take a position on that essential question but nevertheless asks this Court for an injunction overriding the State Fair's decision. It should also go without saying that our answer, for now, must be no.

App. F (emphasis in original). Now-Chief Justice Blacklock also emphasized that this same Attorney General "was not so silent" in KP-0108, which "concluded that a private party in such a position likely *could* prohibit guns in this way under Texas law," and dismissed the Attorney General's "withdrawal" of KP-0108 after filing this lawsuit as

"not the same thing as repudiating its analysis or explaining why it was wrong, which the State has not attempted to do in this Court." *Id.* (emphasis original). "If the AG Opinion was wrong, then surely the party seeking a result at odds with its own publicly stated opinion must at least explain why its opinion was wrong." *Id.*

### F. Back in trial court, the parties cross-moved for summary judgment, and the trial court dismissed Appellants' claims.

After losing its repeated requests for temporary injunctive relief, the State dismissed its temporary-injunction appeal and returned to the trial court to litigate the merits. 1CR265-70. Appellants filed a third amended petition asserting four causes of action—(1) "Prohibited Notices Against License Holders" under Section 411.209, (2) "Declaration that [SFOT] May Not Post 30.06 or 30.07 Signs of Give Other Notice that Firearms Are Prohibited," (3) "Violation of the Constitutional Right to Keep and Bear Arms," and (4) "[SFOT] May Not Post 30.05 Signs"—and requesting declaratory and permanent injunctive relief. 1CR271-88.

All parties moved for summary judgment, with the City Appellees and SFOT seeking both traditional and no-evidence summary judgment. 1CR301-34; 1CR335-62; 1CR363-503; SCR4-581 (joint appendix to motions). After holding another hearing and considering the motions, responsive briefing, and oral arguments, the trial court sustained the City Appellees' and SFOT's evidentiary objections, denied Appellants' motion for summary judgment, granted the City Appellees' and SFOT's motions, and dismissed Appellants' claims. RR1-59; App. A; App. B; App. C; State's Br. at 40 n.9.

22

**G.** **Only the State filed an appellate brief, which raises only a narrow subset of issues related to the State's Section 411.209 claims.**

All four Appellants filed notices of appeal challenging the summary judgment rulings, but the Individual Appellants missed their deadline to file an appellate brief and, upon notification of that deficiency, stated that they would "rely on the State's briefing" and "not … file a separate appellants' brief or [] assert any appellant arguments separate and apart from those advanced by the State of Texas in its brief." Ltr. to Clerk of Court, No. 15-25-00122-CV (Tex. App. [15th Dist.] Oct. 7, 2025); 2CR943; 2CR949.

The State filed its brief on October 23, 2025, and as explained herein, that brief only raises a narrow subset of issues regarding the State's claims under Section 411.209.[5]

## SUMMARY OF THE ARGUMENT

The trial court correctly granted the City Appellees' motion for no-evidence and traditional summary judgment and evidentiary objections, denied Appellants' motion for traditional summary judgment, and dismissed Appellants' claims. Appellants concede that, to prevail in this appeal, they would have to conclusively negate every ground on which the trial court could have made its summary judgment rulings. They come nowhere close to carrying that burden.

---

[5] As discussed in Section V, *infra*, Appellants have waived and abandoned numerous claims and issues by failing to brief them on appeal, including the Individual Appellants' claims, any constitutional claims, any request for injunctive relief, any challenge to the trial court's exclusion of much of their evidence below, and more.

**First**, the trial court lacked subject matter jurisdiction on multiple independent grounds. Appellants sued under Section 411.209, which provides no private right of action and requires even the State to satisfy a series of conditions precedent before filing suit. That disposes of all of Individual Appellants' claims, as they lack standing and undisputedly failed to comply with Section 411.209's mandatory procedures. It also disposes of the State's claims because the same mandatory procedures were also conditions precedent to the State's suit. Independently, Appellants' failure to plead and prove any waiver of sovereign/governmental immunity also deprived the trial court of jurisdiction to hear Appellants' claims against the City Appellees.

**Second**, on the merits, the City Appellees did not violate Section 411.209. That statute only prohibits "a state agency or a political subdivision of the state [from] **tak[ing] any action** … that states or implies that a license holder who is carrying a handgun … is prohibited from entering or remaining on a premises … owned or leased by the governmental entity[.]" TEX. GOV'T CODE § 411.209(a) (emphasis added). Appellants, in contrast, only challenged **SFOT's** adoption and **SFOT's** communication, on **SFOT's** website, of **SFOT's** Policy for **SFOT's** private, ticketed event on property **SFOT** exclusively controlled at all relevant times. SFOT is a private entity, and the record conclusively and uniformly establishes that the City Appellees had no control or influence over SFOT's Policy.

Appellants' attempts to impute SFOT's actions to the City fail for the same reason. The City had nothing to do with SFOT's adoption and communications of the

24

Policy in the first instance, nor has the City ratified or adopted the Policy or SFOT's communications since then. This same Attorney General himself concluded long ago that Section 411.209 does not apply in materially identical circumstances.

The trial court, this Court, and the Supreme Court all found the State's evidence and arguments insufficient to entitle it even to temporary injunctive relief. Neither the facts nor the law have changed, and the State only presented **less** evidence and argument on summary judgment. The trial court correctly granted summary judgment to the City Appellees and denied it to Appellants.

**Third**, the trial court did not abuse its discretion by excluding from evidence, among other things, three letters concerning a different, prior incident over a year earlier regarding a different policy, under a different statute. These letters were patently irrelevant, and, in any event, their exclusion would have been harmless.

**Fourth**, the issues in this appeal are significantly narrower than they were in the trial court because the State has only raised and briefed a small subset of what was raised below. Most obviously and importantly, Appellants have not briefed or raised any appellate challenge regarding summary judgment against the Individual Appellants on jurisdictional grounds, on three of Appellants' four dismissed claims, on all claims against Ms. Tolbert (the City Manager), on Appellants' requests for declaratory judgment and a permanent injunction, or on multiple items of evidence that the trial court excluded. *See* Section V, *infra*. For the City Appellees, that narrows this appeal to only the State's claim against the City for civil penalties under Section 411.209.

## ARGUMENT

## I. Legal Standards.

### A. Standards of review.

The lion's share of this appeal is subject to *de novo* review because the State challenges summary judgment rulings based on questions of subject matter jurisdiction and matter-of-law statutory interpretation in a case where the parties agree the facts are undisputed. *E.g.*, *Burns v. City of San Antonio by & Through City Pub. Serv. Bd. of San Antonio*, 712 S.W.3d 194, 202-03 (Tex. App. [15th Dist.] 2025, pet. filed). The only exception is the State's challenge to the exclusion of three pieces of evidence, which is reviewed for an abuse of the trial court's broad discretion. *Tex. Dep't of Pub. Safety v. Saintes*, No. 15-24-00092-CV, 2025 WL 1710798, at *3 (Tex. App. [15th Dist.] June 19, 2025, no pet.).

"To prevail on a traditional motion for summary judgment, a movant has the burden of proving that it is entitled to judgment as a matter of law and that there is no genuine issue of material fact." *Burns*, 712 S.W.3d at 202. "The trial court properly grants a defendant's no-evidence motion for summary judgment when the nonmovant fails to produce at least a scintilla of evidence raising a genuine issue of material fact as to each essential element of the cause of action." *Keenan v. Robin*, 709 S.W.3d 595, 600 (Tex. 2024).

"Where a party has moved for summary judgment on both traditional and no-evidence grounds, [the Court] first address[es] the movant's no-evidence grounds and if the nonmovant fails to overcome its no-evidence burden on any claim, [the Court]

need not address the traditional motion to the extent it addresses the same claim." *Id.* (cleaned up). "When opposing parties file cross motions for summary judgment, each party must establish that it is entitled to judgment as a matter of law." *Burns*, 712 S.W.3d at 202. "When the trial court grants one motion and denies the other, as the trial court did here, [this Court] review[s] all questions presented and render[s] the judgment the trial court should have rendered." *Id.*

As the State also emphasizes, when, as here, "the order granting summary judgment does not specify the grounds relied upon, [this Court] affirm[s] the judgment if **any** ground that the motion advances is meritorious." *Id.* at 203 (emphasis added, citation omitted); State's Br. at 8, 47; App. A; App. B; App. C.

## B. Subject matter jurisdiction.

Plaintiffs bear "the burden of affirmatively demonstrating the trial court's jurisdiction." *City of Ingleside v. City of Corpus Christi*, 469 S.W.3d 589, 590 (Tex. 2015). That requires "plead[ing] and establish[ing] facts affirmatively showing the court has subject matter jurisdiction." *Dall. Med. Ctr., LLC v. Molina Healthcare of Tex., Inc.*, No. 05-19-01583-CV, 2021 WL 5071830, at *3 (Tex. App.—Dallas Nov. 2, 2021, pet. denied).

Standing is one jurisdictional requirement. *Id.* And, as Appellants do not dispute, in suits against a governmental entity like the City, establishing the trial court's jurisdiction also requires alleging and proving (1) "[s]tatutory prerequisites to a suit, including the provision of notice," were satisfied, TEX. GOV'T CODE § 311.034; *Tex.*

*Disposal Sys. Landfill, Inc. v. Travis Cent. Appraisal Dist.*, 694 S.W.3d 752, 759 n.33 (Tex. 2024), **and** (2) there has been "a valid waiver of [sovereign/governmental] immunity," *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003); *Carson v. Blue Cross Blue Shield of Tex., Inc.*, No. 15-24-00108-CV, 2025 WL 3672580, at *6 (Tex. App. [15th Dist.] Dec. 18, 2025, no pet. h.).

## C.    Rules of statutory interpretation.

When interpreting statutes, the "primary objective is to give effect to the Legislature's intent," *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019), and the Legislature is presumed to have "deliberately and purposefully select[ed] words and phrases it enacts, as well as deliberately and purposefully omit[ted] words and phrases it does not enact," *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 452 (Tex. 2012). The statute's "plain language" therefore controls, "construing the text in light of the statute as a whole," "absent a context indicating a different meaning or the result of the plain meaning of the language yielding absurd or nonsensical results." *Silguero*, 579 S.W.3d at 59 (citations and quotation marks omitted).

Because the plain language must be read in context, however, the Court "must not interpret the statute 'in a manner that renders any part of the statute meaningless or superfluous.'" *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 390 (Tex. 2014) (citation omitted).

## II.  The trial court lacked subject matter jurisdiction.

The first and simplest ground for affirming the trial court's summary-judgment rulings is the lack of subject matter jurisdiction. Again, as the plaintiffs, Appellants bore "the burden of affirmatively demonstrating the trial court's jurisdiction," including that all statutory prerequisites to suit were satisfied and sovereign/governmental immunity was waived. *City of Ingleside*, 469 S.W.3d at 590, *Tex. Disposal*, 694 S.W.3d at 759 n.33; TEX. GOV'T CODE § 311.034; *Whitley*, 104 S.W.3d at 542; *Carson*, 2025 WL 3672580, at *6. They failed to carry that burden.

### A.  There was no jurisdiction over the Individual Appellants' claims because Section 411.209 contains no private right of action, and they did not follow its mandatory procedures, in any event.

The Individual Appellants did not dispute their lack of standing and the trial court's lack of jurisdiction over their claims below, nor does anyone dispute it here. That, alone, requires affirming the judgment dismissing the Individual Appellants' claims. *See* 1CR317-19 (City Appellees' motion arguing this issue); TEX. R. APP. P. 38.1(f)-(i); *Anderson v. G & S Auto of Fort Worth VI, LLC*, No. 02-25-00063-CV, 2025 WL 3039141, at *6 (Tex. App.—Fort Worth Oct. 30, 2025, no pet. h.) (finding appellant "forfeited his complaint [about standing] due to inadequate briefing"); *City of McKinney v. Hank's Rest. Grp., L.P.*, 412 S.W.3d 102, 120-21 (Tex. App.—Dallas 2013, no pet.) (declining to address standing argument raised only cursorily in an appellate brief, without any analysis).

In any event, the Individual Appellants presented no evidence establishing their standing and compliance with any statutory prerequisites to suit, and the evidence in the record affirmatively establishes the opposite. They sued under Section 411.209(g), and their summary judgment motion and underlying claims were predicated on the City Appellees supposedly violating Section 411.209(a). 1CR15; 1CR272, 275-88. Nothing in Section 411.209 even authorizes an individual plaintiff to file legal claims. It only authorizes individuals to "file a complaint with the attorney general," who may then file suit under certain circumstances. TEX. GOV'T CODE § 411.209(d)-(g); *Holcomb v. Waller Cnty.*, 546 S.W.3d 833, 838 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("While Holcomb [an individual] had a right to write the County about an ostensible violation of Section 411.209(a) and complain to the Attorney General if the County failed to act, he could not have filed suit over the matter" and "is not a proper party to any lawsuit concerning the County's disagreement with the Attorney General.").

Appellants conceded this below and have not even mentioned it on appeal. 1CR423 ("[T]he Attorney General holds sole statutory authority under Tex. Gov't Code § 411.209 to pursue claims related to violations of the statute."). That, too, requires affirming summary judgment against the Individual Appellants.

So does the Individual Appellants' failure to comply with Section 411.209's requirements for the limited action it authorizes. There is no evidence that Alan Crider or Tracy Martin ever filed anything with the Attorney General. 1CR95-96; SCR201-18. And although Maxx Juusola submitted a webform inquiry about SFOT's Policy, he

failed to include a copy of any prior notice to the City (because he provided no such prior notice). SCR205-06. That is dispositive because Section 411.209 only authorizes individuals to "file a complaint with the attorney general" "***if*** [1] the [individual] provides the [City] a written notice that describers the location and general facts of the violation ***and*** [2] the [City] does not cure the violation before the end of the third business day after the date of receiving the written notice" ***and*** (3) the complaint "include[s] evidence of the violation and a copy of the written notice provided to the [City]." TEX. GOV'T CODE § 411.209(d) (emphases added). Undisputedly, no Individual Appellant satisfied any of those requirements. 1CR95-96; SCR70-74, 201-18.

As Appellants have not disputed, that means the Individual Appellants (1) lacked a private right of action, (2) lacked any cognizable interest that could support even constitutional standing, and (3) had no ripe claim, depriving the trial court of jurisdiction and entitling the City Appellees to summary judgment against the Individual Appellants. *See* 1CR317-19; *Davis v. Hendrick Autoguard, Inc.*, 294 S.W.3d 835, 837-40 (Tex. App.—Dallas 2009, no pet.) (affirming summary judgment against individual because he "had no standing to assert a claim" under statute that created no private right of action and, instead, "entrust[ed]" enforcement to two State agencies).[6]

---

[6] In the absence of a valid Section 411.209 claim, the Individual Appellants' claims are also barred by sovereign/governmental immunity. *See* Section II.C, *infra*. And Appellant Crider has failed to challenge, both below and on appeal, that he is an unlicensed carrier and, therefore, also lacks standing to sue under Section 411.209, which only regulates actions concerning licensed carriers. *E.g.*, 1CR319.

**B.** **There was no jurisdiction over the State's claims, either, because the statutory prerequisites to suit were not satisfied.**

The State's claims fare no better. Although Section 411.209 authorizes the Attorney General to file suit under some circumstances, any such suit must be predicated on "the complaint" filed by an individual under the statute. TEX. GOV'T CODE § 411.209(f). As discussed, such "complaint … must include evidence of the violation and a copy of [] written notice provided to the [city]" at least three business days prior. *Id.* § 411.209(d).

So, Section 411.209 only authorizes the State to file suit against a city if at least the following prerequisites have been satisfied:

1. An individual provides "written notice" of the alleged Section 411.209(a) violation to the city, ***and then***

2. The city receives three business days to cure the alleged violation, ***and then***

3. The individual files with the Attorney General a written complaint "includ[ing] evidence of the violation and a copy of the written notice provided to the [City]," ***and then***

4. The Attorney General "investigate[s] the complaint to determine whether legal action is warranted," ***and then***

5. The Attorney General provides its own written notice to the city, ***and then***

6. The city receives another 15 days to cure the alleged violation.

*Id.* § 411.209(d)-(g). ***Then, and only then,*** may the Attorney General file suit. *Id.*[7]

Undisputedly, ***none*** of the first three prerequisites were satisfied here. The Attorney General did not receive a single "complaint" regarding this alleged violation of Section 411.209 that was preceded by notice to the City, nor that included evidence of such notice. SCR67-74; *see also* SCR201-18 (inquiries on which State based this lawsuit). Absent an actionable "complaint," the Attorney General could not sue under Section 411.209, period. *See* TEX. GOV'T CODE § 411.209(d)-(g).

The State does not dispute that it received no complaints complying with Section 411.209(d), nor that the failure to satisfy statutory prerequisites/conditions precedent to suit deprives a trial court of jurisdiction. *See* State's Br. at 13. Instead, the State argues that the only conditions precedent to suit under Section 411.209 are in Subsection (f), which reads:

> Before a suit may be brought against a state agency or a political subdivision of the state for a violation of Subsection (a), the attorney general must investigate the complaint to determine whether legal action is warranted. If legal action is warranted, the attorney general must give the chief administrative officer of the agency or political

---

[7] The same instructions are set forth on the Attorney General's own webpage under the heading "Exclusion of Handgun License Holder Complaints," along with a link to submit a complaint. *See* https://www.texasattorneygeneral.gov/exclusion-handgun-license-holder-complaints (last visited Jan. 8, 2026) ("Individuals who observe violations **must first provide written notice to the [city]**" (emphasis in original)); *see also* SCR67-74, 146 (discussing same website submission process with Attorney General's investigator at temporary injunction hearing); SCR201-18 (citizen inquiries generated using that process). The linked application notably requires supporting evidence of both the alleged violation and notice to the alleged violating entity and states, "Your complaint will not be processed until this is provided."

subdivision charged with the violation a written notice that:

(1) describes the violation;

(2) states the amount of the proposed penalty for the violation; and

(3) gives the agency or political subdivision 15 days from receipt of the notice to cure the violation to avoid the penalty, unless the agency or political subdivision was found liable by a court for previously violating Subsection (a).

State's Br. at 14-15.

Because Subsection (f) uses the word "must" twice, the State distills all of Section 411.209 down to "two explicit conditions precedent": (1) "investigate *complaints* [the Attorney General] receives," and (2) "provide notice to the [City]" from the Attorney General. *Id.* at 15 (emphasis the State's). From this, the State concludes that all statutory prerequisites to suit were satisfied because the Attorney General nominally investigated[8] what it calls "verbal and written complaints from residents or persons licensed to carry a handgun" and "staff within the office of the Attorney General," then sent the City

---

[8] The absence of any actionable "complaint" deprived the trial court of jurisdiction regardless of the adequacy of the Attorney General's investigation, but to be clear, the "investigation" here was pretextual to say the least. One non-attorney spent no more than five days (including a weekend) "investigating," made no effort to speak with anyone from the City, disregarded the information SFOT provided, and recommended filing suit based on untested and inaccurate assumptions that were disproven at the temporary injunction hearing. He also made that recommendation despite having allegedly reviewed KP-0108, in which this same Attorney General concluded that materially identical facts did **not** establish a violation of Section 411.209, and which was not withdrawn until well after the "investigation" was complete and this suit was filed. *See* SCR60-61, 66, 80-91, 106; Section III.C., *infra*.

34

written notice 15 days before filing suit. *Id.* at 15-17. That theory is fatally flawed for multiple reasons.

**First**, the statutory prerequisites to suit under Section 411.209 are not located solely in Subsection (f). "Statutory text must always be read in context—not isolation." *Kelley v. Homminga*, 706 S.W.3d 829, 832 (Tex. 2025) (per curiam) (cleaned up). That is particularly true here, as the State's own emphasis of the word "*complaints*" demonstrates. Section 411.209 only allows the Attorney General to sue based on "the violation" alleged in and "investigate[d] [in] *the complaint*." TEX GOV'T CODE § 411.209(d)-(f) (emphasis added). That begs the question: What complaint?

Texas law and the plain text of Section 411.209 answer that question. "[I]t is a rule of law well established that the definite article 'the' particularizes the subject which it precedes and is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'" *TotalEnergies E&P USA, Inc. v. MP Gulf of Mex., LLC*, 667 S.W.3d 694, 710 n.21 (Tex. 2023) (cleaned up, internal quotation marks omitted). Thus, for example, a statutory reference to "'*the* report' [in TEX. CIV. PRAC. & REM. CODE § 90.004] … refers to a specific, definite article—the report" described earlier in the same statutory provision. *Morris v. Pearson Dental Supplies, Inc.*, 657 S.W.3d 677, 681-82 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (emphasis original). Similarly, the phrase "*the* sworn document" in TEX. TAX CODE § 32.06(b) refers to "the same [sworn] document" that "is already familiar to the reader" from TEX. TAX CODE § 32.06(a-1). *Millstone Inv. &*

*Mgmt., L.L.C. v. BNC Retax, L.L.C.*, 410 S.W.3d 869, 874 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (emphasis added).[9]

The same is true here. "[T]he complaint" that the Attorney General must investigate in order to satisfy what even the State concedes is an "explicit condition precedent" in Section 411.209(f) is the one described just a few lines earlier, in Subsection (d) of the same statute: a complaint filed by a Texas resident or person licensed to carry after first providing the City with "written notice" and a three-day cure period, which "include[s] evidence of the violation and a copy of the written notice provided to the [City]." TEX. GOV'T CODE § 411.209(d), (f).

The same conclusion necessarily follows from the State's own logic, which focuses narrowly on the presence of the word "must." State's Br. at 15 (citing TEX. GOV'T CODE § 311.016(3)). Section 411.209(d) requires that "the complaint" the Attorney General "***must*** investigate" under Section 411.209(f) before filing suit "***must*** include … a copy of the written notice provided to the agency of subdivision" by the complainant. TEX. GOV'T CODE § 411.209 (d), (f) (emphases added).

---

[9] *Millstone* is particularly analogous. As the court explained, "Section 32.06(a-1) refers to '***a*** sworn document' because it is the first mention of this particular document in the statute. However, in section 32.06(b), the same document is referred to as '***the*** sworn document' because it is already familiar to the reader." 410 S.W.3d at 874 (internal citations omitted) (emphases added). Section 411.209 similarly references "***a*** complaint" in Subsection (d), then "***the*** complaint" in Subsection (f) (emphases added).

**Second**, interpreting Section 411.209 to require that suits thereunder be predicated on the type of "complaint" described therein is also consistent with the prohibition on "interpret[ing] the statute in a manner that renders any part of the statute meaningless or superfluous." *Crosstex*, 430 S.W.3d at 390 (internal quotation marks omitted). Subsection (d)'s requirements for raising a "complaint" would be meaningless if, as the State now urges, the State could sue under the same statute without even receiving, let alone investigating, any such "complaint."

**Third**, rather than engage with the foregoing, the State admits that Subsection (d) imposes requirements on "*a Texas resident or license holder*," while arguing that it "does nothing to limit the Attorney General's authority to investigate an oral complaint … nor … complaints received from staff within the Office of the Attorney General." State's Br. at 18-19 (emphasis original). That is a curious argument. It concedes both (1) that the Individual Appellants (as Texas residents and/or license holders) were required to follow the procedures in Section 411.209, which they undisputedly did not do, *see supra* § II.A., and (2) that the Attorney General's authority **is** limited as to written complaints from non-staff—another fatal concession when this lawsuit is predicated on precisely that, *see* SCR42-43, 73-74 (State describing its "Exhibit 17" as "the

37

complaints" underlying this lawsuit); SCR201-18 (Exhibit 17, consisting of written inquiries from non-staff).[10]

The State's assertion of "authority to investigate" also misses the point. This dispute concerns the Attorney General's authority **to file this lawsuit** under Section 411.209, not merely his authority "to investigate." As discussed, Section 411.209(f) mandates that, "[b]efore a suit may be brought … for a violation of Subsection (a), the attorney general must investigate the complaint," and "the complaint" necessarily refers to the complaint described in and limited by Section 411.209(d). Thus, it is simply not true that "the Legislature had every opportunity to restrict the complaints the Attorney General could investigate to bring a claim, and it chose not to do so." State's Br. at 20. Section 411.209(d) does exactly that.

The statutory requirements in Section 411.209(d) undisputedly were not satisfied, so the undisputed statutory requirements in Section 411.209(f) were not satisfied, either. Because such statutory prerequisites to suit are undisputedly jurisdictional, the trial

---

[10] This suit is not based on "oral" or "staff" complaints. Although the Attorney General's investigator testified vaguely to receiving "calls" or verbal "messages" about SFOT's Policy, he did not identify the speakers or anything else about any such communications, and the State has never produced or introduced any records of them. *See* SCR40-42. Instead, the State produced and introduced 12 written webform inquiries submitted via the Attorney General's Office's website, which the State identified at the time as "the complaints." SCR40-42, 73-74, 201-18. In the appellate proceedings from the denial of a temporary injunction, the State again repeatedly identified the "total of 12 complaints from law abiding Texans" as the "complaints" on which this lawsuit was predicated. *See* State's Emerg. Mot. for Relief Pending Appeal, *State v. City of Dallas, et al.*, No. 15-24-00103-CV, at 3 & App. 4 (Tex. App. [15th Dist.] Sept. 20, 2024); *see also* Pet. for Writ of Mandamus, *In re State*, No. 24-0813 (Tex. Sept. 25, 2024).

38

court lacked jurisdiction. *See Tex. Disposal*, 694 S.W.3d at 759 n.33. That, alone, requires affirming the trial court's judgment dismissing Appellants' claims.

## C. The City Appellees also have sovereign/governmental immunity from these claims.

Independent of Appellants' lack of standing and failure to satisfy the statutory prerequisites to suit, the trial court also lacked jurisdiction because the City Appellees have sovereign/governmental immunity from Appellants' claims. Appellants do not dispute that the City Appellees have such immunity unless it has been affirmatively waived or the challenged act is *ultra vires*. State's Br. at 21; *see Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017). The State only argues now that immunity was waived under Texas Government Code § 411.209(h), having abandoned any contention that the *ultra vires* exception or any other waiver applies here. *See* State's Br. at 21; 1CR320-22; TEX. R. APP. P. 38.1(f)-(i).[11]

---

[11] Appellants' failure to argue any *ultra vires* claim on appeal independently requires affirming summary judgment in Ms. Tolbert's favor. *See* Section V, *infra*. Section 411.209 neither authorizes suit against any individual defendant nor waives immunity for any individual. *See* TEX. GOV'T CODE § 411.209. Nor do Appellants dispute that the City cannot be liable for any alleged *ultra vires* action. And Appellants have further abandoned any request for injunctive relief, for which they removed allegations of imminent harm or irreparable injury and never attempted to prove those elements below or on appeal, focusing instead on pursuing the State's "claim against the City for civil penalties under section 411.209(b)." *See* State's Br. at 10; *Chambers-Liberty Cntys. Nav. Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019) ("Only *prospective* injunctive relief is available on an *ultra vires* claim." (emphasis in original)); 2CR778; *see also* State's Br. at 7-47 (offering no substantive argument for a permanent injunction).

As a result, the remainder of this Brief focuses on the City, not Ms. Tolbert. The same arguments would, however, apply to her if Appellants had not abandoned any distinct alleged basis for suing her.

Appellants never pleaded any waiver, *see* 1CR271-88, and Section 411.209(h) only waives immunity "to the extent of liability created by this section." That waiver therefore does not apply to the Individual Appellants' claims (because they were properly dismissed and have been waived and abandoned, *see supra* Section II.A; *infra* Section V.). It also does not apply to the State's claims because (1) the statutory prerequisites to the State's suit were not satisfied, *see supra* Section II.B., and (2) the State pleaded no violation of Section 411.209(a), anyway. That statute only prohibits the City from "tak[ing] any action … that states or implies that a license holder who is carrying a handgun is prohibited from entering or remaining on a premises or other place owned or leased by the [City.]" TEX. GOV'T CODE § 411.209(a). In contrast and as detailed in Section III, *infra*, the State only alleges City inaction in response to SFOT (a private entity) adopting and communicating SFOT's Policy. *See also Waller Cnty. v. Paxton*, No. 07-22-00034-CV, 2022 WL 3449497 (Tex. App.—Amarillo Aug. 17, 2022, no pet.) (finding no jurisdiction where Attorney General failed to plead facts establishing a Section 411.209(a) violation).[12]

---

[12] Appellants expressly limit the jurisdictional issues on appeal to "two jurisdictional arguments relevant to the State's claim under section 411.209: (1) that the State's claim was moot as the policy at issue only concerned the 2024 Fair; and (2) the State failed to comply with statutory prerequisites under section 411.209, and thus the City's governmental immunity precluded the State's claim." State's Br. at 7-8. Appellants thus abandoned and waived any challenge to the City Appellees' additional jurisdictional arguments below. *See* 1CR320-24; *Fossil Grp., Inc. v. Harris*, 691 S.W.3d 874, 880 n.11 (Tex. 2024); TEX. R. APP. P. 38.1(f)-(i)). This includes the argument that immunity cannot be waived for declaratory judgments unless a law is being challenged as unconstitutional, which the State did not argue below and does not argue on appeal. *E.g.*, 1CR320-21, 2CR754; Section V, *infra*.

**III.** **As a matter of law, the City did not violate Section 411.209. It took no relevant action at all.**

On the merits, the State's appeal depends on the proposition that the City violated Section 411.209(a) with respect to SFOT's Policy. *See* State's Br. at 22-38. That proposition is fatally flawed because the State presented no evidence that the City took any relevant "action" with respect to SFOT's Policy, and the record is replete with undisputed evidence conclusively establishing the absence of any such City action.

Section 411.209(a) states:

> Except as provided by Subsection (i), a state agency or a political subdivision of the state may not **take any action** … that states or implies that a license holder who is carrying a handgun under the authority of this subchapter is prohibited from entering or remaining on a premises or other place owned or leased by the governmental entity unless license holders are prohibited from carrying a handgun on the premises or other place by Section 46.03, Penal Code, or other law.

TEX. GOV'T CODE § 411.209(a) (emphasis added).[13] It is undisputed that City is a political subdivision of the state, the City owns the fairgrounds, and license holders are not prohibited from carrying a handgun at the fairgrounds by Texas Penal Code § 46.03 or other law.

---

[13] "Subsection (i)" states that "Subsection (a) does not apply to a written notice provided by a state hospital under Section 552.002, Health and Safety Code." TEX. GOV'T CODE § 411.209(i).

41

So, the question here is simple: Did the City "take any action … that states or implies that a license holder who is carrying a handgun … is prohibited from entering or remaining [at the Fair]?" TEX. GOV'T CODE § 411.209(a).

The answer is equally simple and clear: "No."

## A. The City took no action with respect to SFOT's Policy.

There is no evidence of any City action concerning SFOT's Policy, and certainly no evidence of any City action stating or implying that anyone was prohibited from carrying a handgun at the Fair.[14]

The only actions the State asserted in its pre-suit notice to the City and pleadings are SFOT's implementation of the Policy and SFOT's statement on SFOT's website that "The State Fair of Texas prohibits fairgoers from carrying all firearms" into the Fair and answer "No" to the question, "Can someone with a License to Carry (LTC) bring their firearm to the Fair?" 1CR283; 1CR374; SCR220-21.

SFOT's statements make clear that they came from SFOT, not the City. And even now, the State consistently calls them "**SFOT's** actions"—"**SFOT's** exclusion of license holders … from Fair Park," "**SFOT's** policy," and "**SFOT's** ban" "in **SFOT's** website." *E.g.*, State's Br. at 6, 10-11, 27-28, 30, 37-39, 42-43 (emphases added). Indeed, the record uniformly and conclusively establishes that the City had no control or

---

[14] The City Appellees sought both no-evidence and traditional summary judgment on this issue. 1CR324-30.

influence over SFOT's adoption or communication of SFOT's Policy—"none whatsoever"—nor did the City "endorse[]" the Policy or "in any way imply to [SFOT] that they needed to have a policy prohibiting firearms at the Fair." SCR106-16, 132-34. The City did not even learn of the Policy until months after SFOT adopted it. SCR114.

Because the State presented no evidence of any relevant "action" by the City, and because the evidence in the record conclusively establishes the opposite, the trial court did not err by granting summary judgment to the City Appellees and denying it to the State, and this Court should affirm those decisions.

## B.     SFOT's actions cannot be imputed to the City.

The State tries to get around the absence of any City action by imputing SFOT's acts to the City via (1) entry into the Agreement with SFOT and (2) what the State calls "implicit ratification." State's Br. at 27-39. Again, this argument is nothing new. The State argued imputation when it sought temporary injunctive relief, too, and the trial court, this Court, and the Supreme Court all denied such relief. *See, e.g.*, App. F, *In re State*, 698 S.W.3d 904 (Tex. 2024) (now-Chief Justice Blacklock's concurrence: "Even accepting the State's factual allegations as true," they do not amount to "the kind of control that would make the State Fair's decisions about guns imputable to the City."). Neither the facts nor the law have changed since that time.

43

i. The City's entry into the Agreement (in 2003) did not violate Section 411.209 (enacted in 2015) and neither stated nor implied anything about SFOT's Policy (adopted in 2024).

The State argues that the City "explicitly or implicitly acted" in violation of Section 411.209(a) by simply "enter[ing] into the Fair Park Contract with SFOT, granting SFOT certain property rights over Fair Park," because, "[u]nder Texas property law," "[t]he City, SFOT's lessor, could not grant greater rights to SFOT than the rights the City itself held." State's Br. at 30-32. That argument fails on multiple grounds.

**First**, the timeline, alone, defeats the State's argument. As the State admits, the City entered into the Agreement in "2003," yet Section 411.209 was not enacted until "2015," SFOT's Policy did not exist "[p]rior to 2024," and the Attorney General only "began receiving complaints" about it "[o]n August 8, 2024." State's Br. at xiv, 1-2, 26 n.5, 28. The State does not even attempt to explain how the City—by entering into a lease in 2003—could have violated a statute enacted 12 years later, regarding a Policy that was neither adopted nor complained about until over 20 years later.[15]

**Second**, the State concedes that "[t]he Fair Park Contract is silent regarding license holders carrying handguns on the premises of Fair Park." State's Br. at 28. Thus,

---

[15] The State does not argue, and nothing in Section 411.209 indicates, that the statute applies retroactively. *See* TEX. GOV'T CODE § 411.209; *Legacy Hutto, LLC v. City of Hutto*, 687 S.W.3d 67, 69 (Tex. 2024) (per curiam) ("We presume that statutes only apply prospectively.").

entry into the Agreement could not have violated Section 411.209(a), no matter when it occurred. *See* TEX. GOV'T CODE § 411.209(a) (prohibiting only an "action … that states or implies that a license holder who is carrying a handgun … is prohibited from entering or remaining on a premises or other place").

***Third***, the State also misses the point. Any limits "Texas property law" imposes on a lease, the extent of SFOT's rights under this Agreement, and SFOT's alleged "rel[iance] on the Fair Park Contract as the basis for effectuating its ban," State's Br. at 31,[16] have nothing to do with whether the City violated Section 411.209(a). Again, Section 411.209(a) does not prohibit entry into leases; it prohibits certain governmental entities from "tak[ing] any action … that states or implies" license holders cannot carry handguns on certain property, and the Agreement undisputedly "is silent" on that. *Id.* at 28; TEX. GOV'T CODE § 411.209(a); *see also infra* III.B.ii (Legislature knows how to regulate leases but did not do so here).

***Fourth***, the State's position cannot be squared with KP-0108, in which this same Attorney General stated:

> Nothing in the text of [Section 411.209] itself nor in the legislative history suggests that the Legislature considered whether private entities that leased property from a governmental entity were required to allow the carrying of handguns on the property that they lease. The fact that the Legislature created a civil penalty … only for

---

[16] Regardless of its merits, the State's assertion that **SFOT** is acting "unlawfully" is a distinct question from whether the **City** violated Section 411.209(a).

[governmental entities] provides some contextual support for the idea that the Legislature may not have intended to require private lessees of governmental property to allow handguns on that property.

…

**As long as the [governmental entity] leasing the property to the private entity has no control over the decision to post such notice, the [governmental entity] lessor would not be the entity responsible for the posting and would therefore not be subject to a civil penalty under section 411.209**.

App. E (emphasis added). In short, this same Attorney General already considered and rejected the State's position that a city violates Section 411.209 by merely entering into a lease with a lessee who later independently adopts a policy like SFOT's.[17]

*Fifth*, the State's position similarly runs squarely into the repeated denials of temporary injunctive relief in this same case. The trial court, this Court, and the Supreme Court all denied such relief, despite being well aware of the Agreement. Now-Chief Justice Blacklock's concurrence, joined by then-Chief Justice Hecht and Justice Young, even discusses the lessee-lessor relationship between SFOT and the City extensively and explicitly finds the State nonetheless failed to present any evidence "that would make the State Fair's decisions about guns imputable to the City." App. F.

---

[17] As discussed in Section III.C, *infra*, the State's "withdrawal" of KP-0108 after filing this lawsuit does not render the opinion's substance any less compelling. *See also* App. F (now-Chief Justice Blacklock, concurring: "[W]ithdrawing the Opinion is not the same thing as repudiating its analysis or explaining why it was wrong . . . .").

**Sixth**, "allowing the Fair Park Contract … to remain in effect"—*i.e.*, failing to somehow cancel it—after SFOT adopted the Policy is no violation of Section 411.209(a), either. State's Br. at 38-39. The State confuses "action" with "inaction." Section 411.209(a) only prohibits "action," which means "***doing something***." *See Action*, BLACK'S LAW DICTIONARY (12th ed. 2024) (emphasis added); TEX. GOV'T CODE § 411.209(a). Passively "allowing" something to remain is ***doing nothing***.

ii.   The City never "implicitly ratified" SFOT's Policy or communication thereof, either.

The State's argument that the City "implicitly ratified" SFOT's Policy or communications also fails. *See* State's Br. at 27-30. Because Section 411.209(a) only prohibits the City from "tak[ing] [certain] action," the State argues alternatively that "[t]he City has implicitly acted … through its tacit ratification of SFOT's exclusionary policy" by (1) "maintain[ing] that [SFOT] has acted completely within the terms of the Fair Park Contract" and (2) "never attempt[ing] to clarify with SFOT" that SFOT's Policy is (according to the State) not allowed and "refus[ing] to take action to restrain SFOT." *Id.* at 27-29.

**First**, this is another impermissible attempt to rewrite Section 411.209(a) to prohibit "inaction." The statute prohibits only "tak[ing] any action … that states of implies that a license holder who is carrying a handgun … is prohibited from entering or remaining on a premises or other place owned or leased by the governmental entity . . . ." TEX. GOV'T CODE § 411.209(a). The word "implies" does not modify

47

"action"; it modifies the substantive thing conveyed by the required "action." The City either acted, or it did not. The State cannot escape the requirement for "action" by renaming inaction "implied action."

**Second**, the State cites no precedent for applying the agency-law doctrine of ratification to Section 411.209(a), and what it describes would not satisfy that doctrine's requirements, anyway. As the State concedes, "'[r]atification is the adoption or confirmation by a person with knowledge of all material facts of a prior act which did not then legally bind him and which he had the right to repudiate.'" State's Br. at 27 (quoting *BPX Operating Co. v. Strickhausen*, 629 S.W.3d 189, 196 (Tex. 2021)). "[P]arties seeking to establish implied ratification … must point to words or actions that clearly evidence an intention to ratify." *BPX*, 629 S.W.3d at 198 (citation omitted, cleaned up).

Even if the State had established that the City had a "right to repudiate" SFOT's Policy or SFOT's communications thereof (which the State has not done), the City has never adopted or confirmed that Policy or those communications. Quite the contrary. The City has, instead, taken the legal position in this litigation that the City is not liable under Section 411.209(a) because SFOT is a private, nonprofit entity that adopted and communicated the Policy independently, without City participation, control, or influence. *See, e.g.*, 1CR324-30 (City summary judgment motion); 2CR759-71 (City opposition to State's summary judgment motion); *see also* SCR98, 133-34 (SFOT's President confirming the City has "[n]o control" over SFOT's decision-making and has not "in any way endorsed, come out and said, we're behind you, we support the policy,

48

we like this policy … [or] implied [that] in any way … for [SFOT's] policy"); SCR223 (City's response to State's pre-suit notice, again explicitly disclaiming responsibility for "SFOT's announcement" of SFOT's Policy).[18] In short, the City's position is and always has been that SFOT's Policy and communications thereof are **not** the City's.

That is the opposite of ratification, and it is the same legal position the Attorney General himself took from 2016 until after filing this lawsuit—which he still has not repudiated or replaced. *See* App. E.

**Third**, it remains true that it is "not possible for an impartial court to conclude" that "the City impermissibly controlled or influenced the State Fair's gun policy," such that "the State Fair's decisions about guns [could be] imputable to the City." App. F, (Blacklock, J., concurring). On summary judgment, the State presented even **less** evidence and argument on that issue than it presented in the Supreme Court. *Compare* Relator's Emerg. Mot. for Temp. Relief at 6-10, *In re State*, No. 24-0813 (Tex. Sept. 25, 2024), *and* Relator's Pet. for Writ of Mandamus at 5-13, *In re State*, No. 24-0813 (Tex.

---

[18] The State's suggestion that the City somehow violated Section 411.209(a) by arguing in litigation that the City did not violate Section 411.209(a) suffers from myriad additional flaws. The City has a right to defend itself in court, and the State cannot manufacture a violation by incorrectly accusing the City of one, then using any denial of the charge as a violation itself. Plus, any statements made within this lawsuit postdate its filing, they have not been pleaded as grounds for the State's claims, and no statutory prerequisites to suit were satisfied as to them. *See, e.g.*, 1CR276-77 (alleging City's violation of Section 411.209 only "through the statements made by [SFOT]" and by "grant[ing] a property right to its lessee"); TEX. GOV'T CODE § 411.209(d)-(g); *Waller Cnty.*, 2022 WL 3449497, at *3 ("[A]llegations of [Section 411.209(a)] violations that occurred after the lawsuit was filed cannot operate to create jurisdiction and are therefore not relevant to our analysis.").

Sept. 25, 2024), *with* 1CR390-93 (Appellants' summary judgment motion) *and* 2CR891-94 (opposition to City Appellees' summary judgment motion).

**Fourth**, the City has not "shield[ed] itself from liability by enlisting [SFOT] to act as its instrument or agent." State's Br. at 29-30. As discussed, the City has not enlisted SFOT to do anything related to this Policy. It is SFOT's Policy, over which the City undisputedly had no control or input. *See* SCR98, 106-16, 132-34.

**Fifth**, the State cannot escape Section 411.209's plain language by expounding on property rights, legislative power over "public lands," and alleged "public policy" regarding private lessees' independent adoption of policies like SFOT's. State's Br. at 32-37. As the Attorney General himself correctly observed:

> Nothing in the text of [Section 411.209] itself nor in the legislative history suggests that the Legislature considered whether private entities that leased property from a governmental entity were required to allow the carrying of handguns on the property that they lease. The fact that the Legislature created a civil penalty … only for [governmental entities] provides some contextual support for the idea that the Legislature may not have intended to require private lessees of governmental property to allow handguns on that property.

App. E. The statute simply says nothing about any "public policy" regarding private lessees' adoption of policies like SFOT's, nor does it limit any city's lease rights. Instead, it narrowly prohibits only "a state agency or a political subdivision of the state" from taking an "action … that states or implies that a license holder who is carrying a

50

handgun … is prohibited from entering or remaining on a premises or other place owned or leased by the governmental entity … ." TEX. GOV'T CODE § 411.209(a).

The express reference to "leased" property confirms that the Legislature knew governmental entities subject to Section 411.209 sometimes lease their property to other entities. Yet, the Legislature still wrote the statute to regulate only certain actions by the lessor governmental entity—a limitation the Legislature has notably never extended to private lessees, despite amending the statute several times. And as the City pointed out below and the State does not rebut on appeal, the Legislature knows how to impose statutory restrictions on leases when that is what it intends. *See* 2CR764-65 (citing TEX. NAT. RES. CODE § 51.011(b) (restricting power to lease land within 2,500 feet of a military base)). "When the Legislature expresses its intent regarding a subject in one setting, but, as here, remains silent on that subject in another, [courts] generally abide by the rule that such silence is intentional." *Liberal Mut. Ins. Co. v. Adcock*, 412 S.W.3d 492, 497 & n.4 (Tex. 2013) (collecting cases).

**C.     This Attorney General's analysis of Section 411.209 in Opinion KP-0108 confirms that there is no violation here.**

As noted above, the City is not an outlier in its interpretation of Section 411.209. The Attorney General himself reached the same conclusion, opining that "[S]ection 411.209 ***does not apply*** to a city that leases property to a nonprofit entity that provides notice that a license holder carrying a handgun is prohibited from entry." App. E (emphasis added). That opinion and the analysis therein were correct when the Attorney

General issued them, were correct when the Attorney General relied on them to dismiss other inquiries about alleged Section 411.209(a) violations under similar circumstances, and remain correct now.

KP-0108 involved two nonprofits leasing offices on city-owned land. Like here, the question was whether those nonprofits violated Section 411.209(a) by prohibiting guns on the property while they occupied it. *Id.* Like here, the nonprofits were run by their own boards and had exclusive use of the property while their policies were in effect, and the city had no authority over the nonprofits' relevant operations. *Id.* On those facts, the Attorney General concluded:

> As long as the state agency or political subdivision leasing the property to the nonprofit entity has no control over the decision to post such notice, the state agency or political subdivision lessor would not be the entity responsible for the posting and would therefore not be subject to a civil penalty under section 411.209.

*Id.*

Again, material to the Attorney General's conclusion was that "Section 411.209(a) does not address whether a private entity, including an independent nonprofit entity, may provide notice to license holders that the carrying of handguns is prohibited in its offices." *Id.*[19] Noting that a lessor relinquishes possession or occupancy

---

[19] Section 411.209(a) has always extended to "premises … owned … by the governmental entity." TEX. GOV'T CODE § 411.209(a) (2015) (emphasis added); State's Br. at 23-25. As KP-0108 confirms, that does not mean it extends to **actions** by a private lessee of such premises, nor that it imputes a lessee's actions to the lessor.

of the premises to the lessee for the period of the lease, the Attorney General concluded that Section 411.209(a) does not create liability for a city lessor when the lessee independently takes an action that might have violated the statute if the city had taken it. *Id.* And again, in the Attorney General's own words, the "fact that the Legislature created a civil penalty in section 411.209 of the Government Code only for state agencies and political subdivisions provides some contextual support for the idea that the Legislature may **not** have intended to require private lessees of governmental property to allow handguns on that property." *Id.* (emphasis added).

Accordingly, the Attorney General concluded that "[S]ection 411.209 does not apply to a city that leases property to a nonprofit entity that provides notice that a license holder carrying a handgun is prohibited from entry." *Id.* After publishing that opinion, the Attorney General repeatedly reiterated the same conclusion in response to inquiries about other city leases to nonprofits. SCR442-44, 458-60, 461-63.

KP-0108 remained in place when the Attorney General sent notice accusing the City of violating Section 411.209 under materially identical circumstances **and** when the Attorney General filed this lawsuit accusing the City and SFOT of violating Section 411.209 under those same circumstances. SCR445; 1CR14. In short, the only material change since the Attorney General issued KP-0108 is the State's decision to file litigation that cannot be squared with the opinion's reasoning.

The State's attempts to downplay KP-0108 remain uncompelling. No one contends that KP-0108 is "binding" precedent, State's Br. at 44, and the trial court made

53

no such finding, 2CR937; 2CR938-39; 2CR942. The City has simply pointed out the glaring inconsistency between the Attorney General's positions in this lawsuit and KP-0108. *See* 1CR328-30; 2CR761-63, 769-70, 777.

Now-Chief Justice Blacklock, then-Chief Justice Hecht, and Justice Young agreed in the temporary-injunction proceedings that KP-0108 remains relevant, and they devoted a substantial portion of their concurring opinion to it. *See* App. F. They also dismissed the idea that the Attorney General rendered KP-0108 irrelevant by "withdrawing" it after this lawsuit was filed: "[W]ithdrawing the opinion is not the same thing as repudiating its analysis or explaining why its was wrong, which the State ha[d] not attempted to do . . . . If the AG Opinion was wrong, then surely the party seeking a result at odds with its own publicly stated opinion must at least explain why its opinion was wrong." *Id.* The State has yet to provide any such explanation.

Instead, the State asserts vaguely that "previously unforeseen developments[,] … specific factual circumstances of the 2024 State Fair," and 2019 amendments to Section 411.209 made withdrawing KP-0108 "[p]rudent[] … while OAG and the judiciary conducted analyses of the law and any applicable changes to the law and statutory scheme." State's Br. at 45. The State does not identify any such "developments" or "factual circumstances," nor does it explain why or how they or any amendments rendered the Attorney General's opinion wrong. *Id.*

Those vague assertions are particularly uncompelling given how much the State's allegations about the withdrawal have shifted over time. At various points, the State has

also alleged that KP-0108 was somehow impacted by the U.S. Supreme Court's Second Amendment jurisprudence, or the Texas Property Code, or constitutional carry laws, or a distinct inquiry from two members of the Texas Legislature. *See* State's Emerg. Mot. for Relief Pending Appeal at 14-16, *State v. City of Dallas, et al.*, No. 15-24-00103-CV (Tex. App. [15th Dist.] Sept. 20, 2024); Pet. for Writ of Mandamus at 11-13, *In re State*, No. 24-0813 (Tex. Sept. 25, 2024). The State never explained those assertions, either, the Attorney General long ago declined to respond substantively to the legislators' inquiry, and still, no replacement opinion has been issued. *See* 2CR762; 2CR781. In short, nothing has changed since the three Supreme Court justices issued their opinion concurring in the denial of the State's requests for mandamus and temporary injunctive relief, and the State's position is still directly undermined by this same Attorney General's opinion and analysis in KP-0108.

The closest the State now comes to offering a concrete basis for distinguishing KP-0108 is its assertion "that the *arms-length* qualification that KP-0108 reads into [Section 411.209] is extratextual [and] should be rejected by this Court" because "section 411.209 applies to *all* premises owned by the governmental entity." State's Br. at 46 (emphases the State's). That misses the point again. The geographic scope of Section 411.209(a) has always been "premises or other place[s] owned or leased by the [City]," and no one disputes that the fairgrounds are owned by the City. Geography is simply only part of the equation. This lawsuit and KP-0108 address the distinct question of whether it is a violation of Section 411.209(a) for a private lessee to adopt and

communicate a policy barring license holders from carrying handguns on that property. The type of property is not at issue here.

## D. The State also has no answer to the Fifth Circuit's rejection of arguments materially identical to the State's.

The State also ignores a decision by the U.S. Court of Appeals for the Fifth Circuit rejecting the proposition that SFOT's policies and actions concerning the Fair are attributable to the City. In *Rundus v. City of Dallas*, the plaintiff sued SFOT and the City under 42 U.S.C. § 1983 when SFOT excluded him from the Fair for attempting to distribute Bible tracts in violation of another SFOT policy. 634 F.3d 309, 312-15 (5th Cir. 2011). The threshold issue was whether SFOT's enactment and enforcement of the policy was "fairly attributable" to the City, such that SFOT had acted "under color of state law." *Id.* at 312-13.

The Fifth Circuit recited the same material facts presented here, including SFOT's "primary control over the grounds" and "who to admit" during the Fair pursuant to the Agreement; SFOT's "enact[ment of] its own rules and regulations" about the Fair; and the fact that police officers assigned to work the Fair "do not enforce SFOT's rules and regulations." *Id.* at 311-12. The Fifth Circuit found that the Fair is "a private event" run by SFOT; the "City has no say in SFOT's internal decision making, and had no role in enacting or enforcing the restriction on distribution of literature"; and, therefore, SFOT's enactment and enforcement of that Fair policy was not attributable to the City. *Id.* at 315.

56

The evidence here involves the same parties under the same Agreement, and the same absence of control by the City, yet the State urges the opposite conclusion. The State's failure to address *Rundus* in its appellate brief, alone, speaks volumes because the parties briefed and argued *Rundus* extensively below, including on summary judgment. *See* 1CR111; 1CR136-39; 1CR328; 1CR348-49, 358; SCR160; SCR224-26. But the State has gone further by eliminating the distinction it argued below—that the "fair attribution" inquiry is allegedly irrelevant because this is not a Section 1983 federal case. *See* 2CR922-23. The State now cites another federal case for the opposite proposition. *See* State's Br. at 30 (citing *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295-96 (2001), as "discussing fair attribution through 'overt or covert' encouragement, delegations of 'public functions,' or where 'government is entwined in [the intermediary's] management or control'" (alteration in original)).

In other words, the State has effectively conceded *Rundus*'s relevance. And the State's preferred case only further undermines the State's position because, as discussed, there was no "encouragement," "delegation," or "[inter]twined … management or control" between the City and SFOT. *Id.*; *see* SCR98, 106-16, 132-34; App. F, *In re State*, 698 S.W.3d 904 (Tex. 2024) (Blacklock, J., concurring).

## IV. The trial court correctly excluded the State's evidence concerning a prior incident regarding a different policy under a different statute.

The State's argument that the trial court abused its broad discretion by excluding three pieces of evidence is also uncompelling. *See* State's Br. at 39-44. The State argues

that the following three letters should have been admitted as allegedly relevant to what the State calls "the City's previous conduct concerning SFOT's other problematic policies": (1) a February 8, 2023 letter from the Attorney General to the City (the "Peace Officer Letter"), (2) the City's February 21, 2023 response, and (3) SFOT's separate February 13, 2013 letter concerning the Attorney General's letter. *See id.* at 40-42 (citing 1CR437-38, 440, 442-43).

The Peace Officer Letter alleged that a peace officer had been "prohibited by the staff at the State Fair of Texas from carrying their weapon onto the State Fair of Texas premises," apparently at the 2022 State Fair, in potential violation of "Texas Code of Criminal Procedure Article 2.1305." 1CR437-38. The City's response stated that the City was "committed to cooperating with all state of Texas laws concerning a peace officer's authority to carry a weapon onto the Fair Park premises during the State Fair of Texas" but declined to respond substantively because SFOT "is a nonprofit organization that operates the annual State Fair." 1CR440. SFOT responded separately and substantively by explaining that it had "no record of any complaint from the 2022 Fair" but "takes seriously its legal obligations to allow peace officers to lawfully carry their weapon at the fairgrounds," has a "policy" in place to ensure that occurs, and "will re-double its [SFOT's] efforts to educate and train all security personnel to ensure compliance with peace officers' right to carry their weapon." 1CR442-43.

None of that is relevant here. The 2023 Peace Officer Letter itself acknowledged that Section 411.209 does not apply to peace officers. 1CR437-38. Neither does SFOT's

58

challenged Policy. SCR112. Those facts and the timeline also disprove the State's assertion that the City's and SFOT's response letters—sent in February 2023—"go[] directly to the City's implicit ratification of SFOT's construction of the Fair Park Contract and the City's deliberate allowance of SFOT's exclusionary [2024] policy." State's Br. at 43; *see also id.* at 27 ("Ratification is the adoption or confirmation by a person … of a prior act . . . .").

Nothing in the 2023 letters speaks to the City's "ability to influence its lessee," either. *Id.* at 43. That is neither an accurate description of the record nor the correct inquiry. *See, e.g.,* App. F, *In re State,* 698 S.W.3d 904 (Tex. 2024) (now-Chief Justice Blacklock describing inquiry as whether "the City impermissibly controlled or influenced **the State Fair's gun policy**" (emphasis added)); App. E (KP-0108: "As long as the [City] has no control **over the decision to post [] notice [of SFOT's 2024 Policy]**, the [City] would not be the entity responsible for the posting and would therefore not be subject to a civil penalty under section 411.209." (emphasis added)). The fact that SFOT and the City sent separate letters and the content of those letters also reaffirm that SFOT and the City are distinct entities, with SFOT (not the City) "operat[ing] the annual State Fair." 1CR440, 442-43.[20]

---

[20] The State also cites briefly to "C.R. 454-460, 466-468, 480" in the introductory paragraph of its argument about exclusion of evidence, but the State offers no argument regarding the exclusion of that evidence. State's Br. at 39-40. At most, the State only challenges the exclusion of Exhibits 1-A, 1-B, and 1-C to its motion for summary judgment and does not address the trial court's exclusion of Exhibits 1-D, 1-F, 2-A, 2-B, 2-C, or Exhibit 3. *See* State's Br. 39-44. Appellants have, therefore, waived,

For the same reasons, even if the trial court had abused its discretion by excluding the Peace Officer Letter and responses (it did not), that would be harmless error. The letters illustrate the absence of City control over SFOT, not the existence of such control. And certainly, none of the letters cure the myriad flaws the City and SFOT raised in their summary judgment motions, including the distinct jurisdictional flaws in the State's case, the State's misinterpretation of Section 411.209, and the absence of any relevant City "action."

## V. Appellants have waived the vast majority of the issues in this case.

Although Appellants filed broad notices of appeal from the trial court's summary judgment rulings, they have waived the vast majority of potential appellate issues. 2CR943; 2CR949. The Individual Appellants filed no appellate brief, and the State's Brief acknowledges that the Court "must affirm if any of the grounds asserted in the [City's and SFOT's] motion[s for summary judgment] are meritorious" but challenges only a small subset of the grounds the City and SFOT asserted. State's Br. at 5-6; *see also id.* at 7-48. Because Appellants have waived so many grounds, the City provides the Court with this separate discussion of waiver.

---

abandoned, and inadequately briefed any challenge to the exclusion of those additional exhibits on appeal. *See* TEX. R. APP. P. 38.1(f)-(i); *Stringfellow v. Tex. Dep't of Pub. Safety*, No. 15-24-00024-CV, 2025 WL 996361, at *3-4 (Tex. App. [15th Dist.] Apr. 3, 2025, pet. denied); *Ernie Wells et al. v. MSW 1221 South Lamar, LLC et al.*, No. 05-23-01288-CV, 2025 WL 3055622, at *13 (Tex. App.—Dallas Oct. 31, 2025, no pet. h.); Section V, *infra*.

In any appeal, appellants must "state concisely all issues or points presented for review," "state concisely and without argument the facts pertinent to the issues or points presented … supported by record references," and provide "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(f)-(i). "An appellant's issue on appeal that is unsupported by argument or citation to legal authority presents nothing for an appella[te] court to review." *Stringfellow v. Tex. Dep't of Pub. Safety*, No. 15-24-00024-CV, 2025 WL 996361, at *3 (Tex. App. [15th Dist.] Apr. 3, 2025, pet. denied) (quotation marks and citation omitted). Thus, any such issues are "waived." *Eriksen v. Nelson*, 708 S.W.3d 302, 307 n.5 (Tex. App. [15th Dist.] 2025, no pet.); *Ernie Wells et al. v. MSW 1221 South Lamar, LLC et al.*, No. 05-23-01288-CV, 2025 WL 3055622, at *13-14 (Tex. App.—Dallas Oct. 31, 2025, no pet. h.); *see also, e.g., Anderson*, 2025 WL 3039141, at *6 (finding appellant "forfeited his complaint [about standing] due to inadequate briefing").[21]

Appellants have waived myriad issues here by failing to raise them on appeal at all, much less adequately brief them. The primary dispositive waived issues are listed in the table below for ease of reference.

---

[21] The State cannot cure these waivers by raising additional issues in a reply brief. *Ernie Wells*, 2025 WL 3055622, at *14 (citing cases).

| Waived Claim/Issue | Grounds for Summary Judgment that Appellants Fail to Challenge on Appeal |
|---|---|
| **All Claims by Individual Appellants (1CR275-88)** | Appellants do not challenge dismissal of these claims, including based on the below arguments:<br><br>• No standing and no statutory private right of action. 1CR317-19, 323-24; 2CR753-54, 756.<br><br>• No waiver of sovereign/governmental immunity. 1CR320-21; 2CR756.<br><br>• Failure to satisfy statutory prerequisites to suit. 1CR318; 2CR754-55. |
| **Appellants' Second Cause of Action – Declaration Regarding Posting Signs under TEX. PENAL CODE §§ 30.06 & 30.07 (1CR280-82)** | Courts lack jurisdiction to enjoin or declare rights concerning hypothetical enforcement of criminal trespass laws. 1CR321-23; 2CR775-77. |
| **Appellants' Third Cause of Action – Constitutional Right to Keep and Bear Arms and/or 2021 Firearm Carry Act (1CR282-84)** | Appellants do not challenge the dismissal of this claim on appeal, including because the facts here do not establish any state action necessary to support such a claim. *See* 1CR111; 1CR136-39; 1CR328; 1CR348-49, 358; SCR160; SCR224-26; *cf.* 2CR922-23. |
| **Appellants' Fourth Cause of Action - Declaration regarding Posting Signs under TEX. PENAL CODE § 30.05 (1CR285-86)** | Courts lack jurisdiction to enjoin or declare rights concerning hypothetical enforcement of criminal trespass laws. 1CR321-23; 2CR775-77. |
| **Appellants' Request for Declarations and Injunctions Concerning Tex. Penal Code §§ 30.06 and 30.07 (1CR280-21, 286-88)** | Courts lack jurisdiction to enjoin or declare rights concerning hypothetical enforcement of criminal trespass laws. 1CR321-23; 2CR775-77. |

| Waived Claim/Issue | Grounds for Summary Judgment that Appellants Fail to Challenge on Appeal |
|---|---|
| **Appellants' Claims Against the City's City Manager, Ms. Tolbert (1CR283-88)** | The State mentions Ms. Tolbert's change in title without arguing against her dismissal, *e.g.*, State's Br. 3 & n.1, including because of governmental immunity.<br><br>• Appellants only asserted purported "*ultra vires*" claims against Ms. Tolbert, which they do not defend on appeal. 1CR321-23; 2CR756-59.<br><br>• There has been no waiver of sovereign/governmental immunity for Ms. Tolbert. 1CR320-22; 2CR756-59. |
| **Appellants' Request for a Permanent Injunction (1CR287-88)** | Appellants fail to plead, prove, or argue necessary elements on appeal (*e.g.* irreparable injury and imminent harm). 1CR315, 321-23, 325, 336, 359; 2CR777-78. |
| **Any Waiver of Governmental Immunity Other Than Section 411.209(h)** | Appellants failed to plead and prove any such waiver and, on appeal, do not argue for waiver on any grounds other than through Section 411.209(h). 1CR320-22; 2CR754, 756-59. |
| **Exclusion of the State's Evidence, Except the Peace Officer Letter and Responses Thereto** | • The excluded evidence was irrelevant; several items were also hearsay. 2CR751, 815-17, 789-90.<br><br>• No appellate argument against exclusion of Exhibits 1-D, 1-F, 2-A, 2-B, 2-C, or Exhibit 3. State's Br. 39-44. |

## CONCLUSION AND PRAYER

For the reasons stated above, the City Appellees respectfully request that the Court affirm the trial court's grant of summary judgment to the City Appellees, exclusion of portions of the State's evidence, and denial of summary judgment to Appellants, and grant the City Appellees any further relief to which they may be entitled.

Respectfully submitted,

*/s/ Jeffrey M. Tillotson*

Jeffrey M. Tillotson
  State Bar No. 20039200
Anne M. Johnson
  State Bar No. 00794271
Jonathan R. Patton
  State Bar No. 24088198
Nathaniel D. Buchheit
  State Bar No. 24119200
Joseph Austen Irrobali
  State Bar No. 24092564
Megan M. Coker
  State Bar. No. 24087323
**TILLOTSON JOHNSON & PATTON**
1201 Main St., Suite 1300
Dallas, Texas 75202
Phone: (214) 382-3041
jtillotson@tillotsonlaw.com
ajohnson@tillotsonlaw.com
jpatton@tillotsonlaw.com
nbuchheit@tillotsonlaw.com
airrobali@tillotsonlaw.com
mcoker@tillotsonlaw.com

**Attorneys for Appellees the City of Dallas
and Kimberly Bizor Tolbert, in her
official capacity as the City Manager for
the City of Dallas**

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Texas Rule of Appellate Procedure 9.4(i)(2)(B) because, according to the Microsoft Word word-count function, it contains 13,525 words, excluding the parts of the brief exempted by Texas Rule of Appellate Procedure 9.4(i)(1).

2. This brief complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) because it has been prepared in a proportionally spaced typeface using Microsoft Word software in Garamond 14-point font in text and Garamond 12-point font in footnotes.

*/s/ Jeffrey M. Tillotson*
Jeffrey M. Tillotson

## CERTIFICATE OF SERVICE

In accordance with the Texas Rules of Appellate Procedure, I hereby certify that a true and correct copy of this brief was served on the following counsel of record via e-service on the 9th day of January, 2026.

Ken Paxton
Brent Webster
Ralph Molina
James Lloyd
Ernest C. Garcia
Canon Parker Hill
Steven Ogle
Melissa Juarez
OFFICE OF THE ATTORNEY GENERAL OF TEXAS
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
ernest.garcia@oag.texas.gov
canon.hill@oag.texas.gov
steven.ogle@oag.texas.gov
melissa.juarez@oag.texas.gov

**_Attorneys for Appellant State of Texas_**

Tony K. McDonald
Connor Ellington
The Law Offices of Tony McDonald
1308 Ranchers Legacy Trail
Fort Worth, TX 76126

**_Attorneys for the Individual Appellants_**

James B. Harris
Bryan P. Neal
Weston J. Mumme
Cole Browndorf
HOLLAND & KNIGHT LLP
One Arts Plaza
1722 Routh St., Suite 1500
Dallas, Texas 75201
Jim.Harris@hklaw.com
Bryan.Neal@hklaw.com
Weston.Mumme@hklaw.com
Cole.Browndorf@hklaw.com

Robert B. Smith
Two Turtle Creek Village
3838 Oak Lawn Ave., Suite 1000
Dallas, Texas 75219
Robert@Smith-Firm.com

**_Attorneys for Appellee State Fair of Texas_**

_/s/ Jeffrey M. Tillotson_
Jeffrey M. Tillotson

**APPENDIX**

| Tab | Description | Record Location |
|---|---|---|
| A | **Order Denying Appellants' Summary Judgment Motion** | **2CR937** |
| B | **Order Granting SFOT's Summary Judgment Motion and Sustaining SFOT's and City Appellees' Evidentiary Objections** | **2CR938-39** |
| C | **Order Granting City Appellees' Motion for Traditional and No-Evidence Summary Judgment** | **2CR942** |
| D | **TEX. GOV'T CODE § 411.209** | **N/A** |
| E | **Texas Attorney General Opinion KP-0108,** Att'y Gen. Op. KP-0108, 2016 WL 4267994 (2016). | **SCR173-76** |
| F | **Concurring Opinion on Petition for Writ of Mandamus and Motion for Emergency Relief,** *In re State*, 698 S.W.3d 904 (Tex. 2024) (Blacklock, J., concurring in the denial of the petition for writ of mandamus and motion for emergency relief). | **2CR511-15** |

# TAB A

| | | |
|---|---|---|
| STATE OF TEXAS, MAXX JUUSOLA, TRACY MARTIN, and ALAN CRIDER | § § § § § § § § § § § § § § § § § | IN THE DISTRICT COURT |
| *Plaintiffs,* | | |
| v. | | 298TH JUDICIAL DISTRICT |
| CITY OF DALLAS, KIMBERLY BIZOR TOLBERT, in her official capacity as the City Manager for the City of Dallas, and the STATE FAIR OF TEXAS, | | |
| *Defendants.* | | DALLAS COUNTY, TEXAS |

## [~~PROPOSED~~] ORDER

On this day came to be heard Plaintiffs' Motion for Summary Judgment (the "Motion"). Having considered the Motion, the evidence and all other matters properly before it, the Court hereby DENIES the Motion.

IT IS ORDERED that summary judgment for Plaintiffs is hereby DENIED as to Plaintiffs' claims against Defendant City of Dallas and Defendant Kimberly Bizor Tolbert, in her official capacity as the City Manager for the City of Dallas (collectively, the "City Defendants"); Plaintiffs' claims against the City Defendants are hereby DISMISSED with prejudice.

SIGNED this ____ day of _____, 2025.

_____
Judge Presiding

**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# TAB B

| | | |
|---|---|---|
| STATE OF TEXAS, MAXX JUUSOLA, TRACY MARTIN, and ALAN CRIDER | § § § | IN THE DISTRICT COURT |
| *Plaintiffs*, | § § § | |
| v. | § § | |
| | § | 298TH JUDICIAL DISTRICT |
| CITY OF DALLAS, KIMBERLY BIZOR TOLBERT, in her official capacity as the Interim City Manager for the City of Dallas, and the STATE FAIR OF TEXAS, | § § § § § § | |
| | § § | |
| *Defendants*. | § | DALLAS COUNTY, TEXAS |

## ORDER

Before the Court are Plaintiffs' Motion for Summary Judgment; Defendant State Fair of Texas's ("State Fair") Traditional and No-Evidence Motion for Summary Judgment, in which State Fair also makes evidentiary objections and joins in Defendants City of Dallas and Kimberly Bizor Tolbert's (collectively, the "City Defendants") Objections and Motion to Strike Plaintiffs' Summary Judgment Evidence.

Having considered the above, the pleadings, the arguments, and all other materials properly before it, the Court rules as follows:

1.      Plaintiffs' Motion for Summary Judgment is **DENIED**.

2.      State Fair's evidentiary objections are **SUSTAINED**.

3.      The Court has separately ruled on the City Defendants' Objections and Motion to Strike Plaintiffs' Summary Judgment Evidence in which State Fair joined. That ruling applies equally to State Fair.

**ORDER – Page 1**

4.      Defendant State Fair's Traditional and No-Evidence Motion for Summary Judgment is **GRANTED**. All claims and requests for relief of any kind made by Plaintiffs against State Fair are **DISMISSED WITH PREJUDICE**.

All relief not expressly granted herein is denied. By this order and previous rulings of the Court, all claims and requests for relief of all parties have been resolved. Therefore, this is a final judgment.

SIGNED this ____24____ day of _____June_____, 2025.

_____
Judge Presiding

# TAB C

| | | |
|---|---|---|
| STATE OF TEXAS, MAXX JUUSOLA, TRACY MARTIN, and ALAN CRIDER | § § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § § | |
| v. | § § | 298TH JUDICIAL DISTRICT |
| CITY OF DALLAS, KIMBERLY BIZOR TOLBERT, in her official capacity as the City Manager for the City of Dallas, and the STATE FAIR OF TEXAS, | § § § § § § § | |
| Defendants. | § § | DALLAS COUNTY, TEXAS |

## [~~PROPOSED~~] ORDER

On this day came to be heard Defendants City of Dallas and Kimberly Bizor Tolbert's (the "City Defendants") Motion for Traditional and No-Evidence Summary Judgment (the "Motion"). Having considered the Motion, the evidence, and all other matters properly before it, the Court hereby GRANTS the Motion.

IT IS ORDERED that summary judgment for the City Defendants is hereby GRANTED on Plaintiffs' claims against the City Defendants; Plaintiffs' claims against the City Defendants are hereby DISMISSED with prejudice.

SIGNED this 24 day of June, 2025.

_____
Judge Presiding

**ORDER GRANTING CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TAB D

Vernon's Texas Statutes and Codes Annotated
  Government Code (Refs & Annos)
    Title 4. Executive Branch (Refs & Annos)
      Subtitle B. Law Enforcement and Public Protection
        Chapter 411. Department of Public Safety of the State of Texas (Refs & Annos)
          Subchapter H. License to Carry a Handgun

V.T.C.A., Government Code § 411.209

§ 411.209. Wrongful Exclusion of Handgun License Holder

Effective: September 1, 2021
Currentness

(a) Except as provided by Subsection (i), a state agency or a political subdivision of the state may not take any action, including an action consisting of the provision of notice by a communication described by Section 30.06 or 30.07, Penal Code, that states or implies that a license holder who is carrying a handgun under the authority of this subchapter is prohibited from entering or remaining on a premises or other place owned or leased by the governmental entity unless license holders are prohibited from carrying a handgun on the premises or other place by Section 46.03, Penal Code, or other law.

(b) A state agency or a political subdivision of the state that violates Subsection (a) is liable for a civil penalty of:

(1) not less than $1,000 and not more than $1,500 for the first violation; and

(2) not less than $10,000 and not more than $10,500 for the second or a subsequent violation.

(c) Each day of a continuing violation of Subsection (a) constitutes a separate violation.

(d) A resident of this state or a person licensed to carry a handgun under this subchapter may file a complaint with the attorney general that a state agency or political subdivision is in violation of Subsection (a) if the resident or license holder provides the agency or subdivision a written notice that describes the location and general facts of the violation and the agency or subdivision does not cure the violation before the end of the third business day after the date of receiving the written notice. A complaint filed with the attorney general under this subsection must include evidence of the violation and a copy of the written notice provided to the agency or subdivision.

(e) A civil penalty collected by the attorney general under this section shall be deposited to the credit of the compensation to victims of crime fund established under Subchapter J, Chapter 56B, Code of Criminal Procedure.

(f) Before a suit may be brought against a state agency or a political subdivision of the state for a violation of Subsection (a), the attorney general must investigate the complaint to determine whether legal action is warranted. If legal action is warranted, the attorney general must give the chief administrative officer of the agency or political subdivision charged with the violation a written notice that:

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

(1) describes the violation;

(2) states the amount of the proposed penalty for the violation; and

(3) gives the agency or political subdivision 15 days from receipt of the notice to cure the violation to avoid the penalty, unless the agency or political subdivision was found liable by a court for previously violating Subsection (a).

(g) If the attorney general determines that legal action is warranted and that the state agency or political subdivision has not cured the violation within the 15-day period provided by Subsection (f)(3), the attorney general or the appropriate county or district attorney may sue to collect the civil penalty provided by Subsection (b). The attorney general may also file a petition for a writ of mandamus or apply for other appropriate equitable relief. A suit or petition under this subsection may be filed in a district court in Travis County or in a county in which the principal office of the state agency or political subdivision is located. The attorney general may recover reasonable expenses incurred in obtaining relief under this subsection, including court costs, reasonable attorney's fees, investigative costs, witness fees, and deposition costs.

(h) Sovereign immunity to suit is waived and abolished to the extent of liability created by this section.

(i) Subsection (a) does not apply to a written notice provided by a state hospital under Section 552.002, Health and Safety Code.

(j) In this section, "premises" has the meaning assigned by Section 46.03, Penal Code.

**Credits**
Added by Acts 2015, 84th Leg., ch. 593 (S.B. 273), § 1, eff. Sept. 1, 2015. Amended by Acts 2017, 85th Leg., ch. 1143 (H.B. 435), §§ 5, 6, eff. Sept. 1, 2017; Acts 2019, 86th Leg., ch. 469 (H.B. 4173), § 2.44, eff. Jan. 1, 2021; Acts 2019, 86th Leg., ch. 784 (H.B. 1791), § 1, eff. Sept. 1, 2019; Acts 2021, 87th Leg., ch. 809 (H.B. 1927), § 11, eff. Sept. 1, 2021.

Notes of Decisions (12)

V. T. C. A., Government Code § 411.209, TX GOVT § 411.209
Current through the end of the 2025 Regular and Second Called Sessions of the 89th Legislature.

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

# TAB E



# KEN PAXTON
#### ATTORNEY GENERAL OF TEXAS

August 9, 2016

The Honorable Lisa Pence
Erath County Attorney
100 West Washington
Stephenville, Texas 76401

Opinion No. KP-0108

Re: Whether a nonprofit entity that has offices on land owned by a municipality may restrict the licensed carrying of handguns on the property (RQ-0097-KP)

Dear Ms. Pence:

You explain that in your county "at least two non-profit agencies . . . have offices located on land owned" by a city.[1] You further explain that those agencies are the only entities located on the specific properties in question, that no governmental offices are located on the properties, and that the city "has no authority as to the operation of the non-profit and all decisions are made by an independent board of directors." Request Letter at 1. Given these facts you ask whether handguns may be prohibited by a nonprofit entity when the entity's offices are located on property owned by a city or governmental entity. Id. at 2. You base your questions on section 411.209 of the Government Code and sections 30.06 and 30.07 of the Penal Code, and we will address each of these provisions in turn.

The Eighty-fourth Legislature enacted section 411.209 of the Government Code, which prohibits state agencies and political subdivisions from providing notice that a licensed handgun carrier is prohibited from entry to a location other than those articulated in the Penal Code:

> A state agency or a political subdivision of the state may not provide notice by a communication described by Section 30.06, Penal Code, or by any sign expressly referring to that law or to a concealed handgun license, that a license holder carrying a handgun under the authority of this subchapter is prohibited from entering or remaining on a premises or other place owned or leased by the governmental entity unless license holders are prohibited from carrying a handgun on the premises or other place by Section 46.03 or 46.035, Penal Code.

---

[1]Letter from Honorable Lisa Pence, Erath Cty. Att'y, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Feb. 11, 2016), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

**Exhibit 8 - State of Texas 000463**

TEX. GOV'T CODE § 411.209(a). A state agency or political subdivision found in violation of this provision is liable for a civil penalty administered by the attorney general. *Id.* § 411.209(b)–(h).

Relevant to your request, the prohibition in subsection 411.209(a) applies only to "a state agency or political subdivision of the state." *Id.* § 411.209(a). Section 411.209 does not address whether a private entity, including an independent nonprofit entity, may provide notice to license holders that the carrying of handguns is prohibited in its offices. If a private entity is operating jointly with a governmental entity or has been hired by the governmental entity to perform certain governmental functions, fact questions could arise about which entity effectively posted a notice prohibiting the carrying of guns. However, under the facts you describe, the private, nonprofit entity appears to have an arms-length agreement to lease city property and is not otherwise affiliated with the city. *See* Request Letter at 1. "As a general rule, a lessor relinquishes possession or occupancy of the premises to the lessee." *Levesque v. Wilkens*, 57 S.W.3d 499, 504 (Tex. App.—Houston [14th Dist.] 2001, no pet.). In such circumstances, section 411.209 does not apply to a city that leases property to a nonprofit entity that provides notice that a license holder carrying a handgun is prohibited from entry. As long as the state agency or political subdivision leasing the property to the nonprofit entity has no control over the decision to post such notice, the state agency or political subdivision lessor would not be the entity responsible for the posting and would therefore not be subject to a civil penalty under section 411.209. *See* TEX. GOV'T CODE § 411.209(a).

Whether sections 30.06 and 30.07 of the Penal Code make it an offense for a person carrying a handgun to enter property leased by a nonprofit entity from a state agency or political subdivision is a separate question. *See* Request Letter at 1. Subsections 30.06(a) and 30.07(a) make it an offense for a license holder to carry a handgun, either concealed or openly, "on property of another without effective consent," when the license holder "received notice that entry on the property by a license holder . . . was forbidden." TEX. PENAL CODE §§ 30.06(a), .07(a). Subsections 30.06(e) and 30.07(e) create exceptions to the application of those sections if "the property on which the license holder . . . carries a handgun is owned or leased by a governmental entity and is not a premises or other place on which the license holder is prohibited from carrying the handgun under Section 46.03 or 46.035." *Id.* § 30.06(e); *see id.* § 30.07(e). We must therefore determine whether these exceptions to the offenses apply to property that is owned by a governmental entity but leased to a private, nonprofit organization.

When the Legislature enacted subsection 30.06(e), its stated focus was on local governmental entities that were prohibiting concealed handguns from public places. *See* House Research Org., Bill Analysis, Tex. S.B. 501, 78th Leg., R.S. (May 9, 2003) at 4 ("A city's ban on concealed handguns in public buildings could make it needlessly difficult for a person lawfully carrying a concealed handgun to perform necessary tasks such as paying a utility bill or renewing a car registration."). Nothing in the text of the statute itself nor in the legislative history suggests that the Legislature considered whether private entities that leased property from a governmental entity were required to allow the carrying of handguns on the property that they lease. The fact that the Legislature created a civil penalty in section 411.209 of the Government Code only for state agencies and political subdivisions provides some contextual support for the idea that the Legislature may not have intended to require private lessees of governmental property to allow handguns on that property. *See* TEX. GOV'T CODE § 411.209(a).

**Exhibit 8 - State of Texas 000464**

Nevertheless, when construing statutes, courts recognize that the words the Legislature chooses are "the surest guide to legislative intent." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999). When possible, courts will discern legislative intent from the plain meaning of the words chosen, and only when words are ambiguous will courts "resort to rules of construction or extrinsic aids." *Entergy Gulf States, Inc.*, 282 S.W.3d 433, 437 (Tex. 2009). The plain language of subsections 30.06(e) and 30.07(e) make an exception if the property on which the license holder carries a gun "is owned or leased by a governmental entity." TEX. PENAL CODE §§ 30.06(e), .07(e). These statutes make no exception to that exception for property owned by a governmental entity but leased to a private entity, and to conclude that carrying a handgun on such property is prohibited would therefore require reading language into the statute beyond what the Legislature included. *See Entergy Gulf States, Inc.*, 282 S.W.3d at 443 (noting that courts "refrain from rewriting text that lawmakers chose"). Thus, a court would likely conclude that a license holder carrying a handgun on property that is not a premises or other place from which the license holder is prohibited from carrying under sections 46.03 or 46.035 of the Penal Code and that is owned by a governmental entity but leased to a private entity is excepted from the offenses in 30.06(a) and 30.07(a).[2]

---

[2]Such a conclusion would not necessarily preclude a private entity's claim for civil trespass. "Generally, an owner of realty has the right to exclude all others from use of the property[.]" *Severance v. Patterson*, 370 S.W.3d 705, 709 (Tex. 2012). "[E]very unauthorized entry upon land of another is a trespass[,] even if no damage is done or injury is slight." *Coastal Oil & Gas Corp. v. Garza Energy Tr.*, 268 S.W.3d 1, 12 n.36 (Tex. 2008) (quotation marks omitted). Thus, while criminal enforcement may not be available, we find no authority that prohibits the private entity from restricting entry onto that leased property for individuals carrying handguns.

**Exhibit 8 - State of Texas 000465**

## S U M M A R Y

Section 411.209 of the Government Code creates a civil penalty for a state agency or a political subdivision that provides notice that a license holder carrying a handgun is prohibited on property owned by the governmental entity unless carrying a handgun in such locations is expressly prohibited under the Penal Code. Section 411.209 applies only to a state agency or political subdivision of the State and does not address whether a private entity, including an independent nonprofit entity, may provide notice to license holders that the carrying of handguns is prohibited in the private entity's offices. As long as the state agency or political subdivision leasing the property to the private entity has no control over the decision to post such notice, the state agency or political subdivision lessor would not be the entity responsible for the posting and would therefore not be subject to a civil penalty under section 411.209.

A court would likely conclude that a license holder who carries a handgun on property that is owned by a governmental entity but leased to a private entity and that is not a premises or other place from which the license holder is prohibited from carrying a handgun under sections 46.03 or 46.035 of the Penal Code is excepted from the offenses in subsections 30.06(a) and 30.07(a) of the Penal Code.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

**Exhibit 8 - State of Texas 000466**

# TAB F

# Supreme Court of Texas

No. 24-0813

In re The State of Texas,

*Relator*

## On Petition for Writ of Mandamus

JUSTICE BLACKLOCK, joined by Chief Justice Hecht and Justice Young, concurring in the denial of the petition for writ of mandamus and motion for emergency relief.

Remarkably, the State's presentation to this Court *takes no position* on whether the State Fair of Texas, a private entity, has the legal authority to exclude patrons carrying handguns from the Fair. This may surprise many observers, given that the ostensible purpose of this litigation is to determine whether Texas law entitles law-abiding Texans to carry handguns at the State Fair despite the Fair's recently enacted policy to the contrary. That is a very important question. It is a question on which both law-abiding handgun owners and the operators of the State Fair deserve a clear answer. It is a question to which further litigation may provide a clearer answer. But it is not a question answered—or even addressed—by the State's emergency filings in this Court. This Court cannot possibly order the State Fair to allow

handguns to be carried at this year's Fair when the party seeking that relief does not even argue that Texas law obligates the Fair to do so.

The State Fair of Texas is a private entity that operates the Fair on public land leased from the City of Dallas. Whether Texans have a legal right to carry handguns at a mass public event of this nature is not a question that should ever be in doubt. Law-abiding handgun owners in Texas know that there are certain places where they may not carry their weapon. They need to know—with maximum clarity—whether the State Fair is one of those places. Yet the State's filings *do not even attempt to answer that question.* Instead of arguing that the *State Fair* lacks the authority to prohibit guns at the Fair, the State instead argues that the *City of Dallas* may not promote or enforce the State Fair's prohibition on guns. Assume the State is correct. Assume that section 411.209(a) of the Government Code prohibits the City of Dallas from assisting in the enforcement of, or associating itself in any way with, the State Fair's gun policy. Even if that is true—and it may well be—this would not mean that handgun owners are entitled by law to carry their weapons at the State Fair despite the State Fair's contrary policy. On that pivotal question, the State's filings are conspicuously silent.[1]

---

[1] The State contends that the Fair's gun policy would be unenforceable if the City's police department is prohibited from enforcing it. That is obviously wrong. The Fair intends to hire private security, and the Dallas County District Attorney is not a party to this case. Perhaps the worst possible outcome from all of this would be a court order that sides with the State but actually only enjoins the City of Dallas and its police department based on section 411.209, which is the kind of order for which much of the State's briefing seems to advocate. That order would leave the State Fair's gun policy in place—and expose those who violate it to potential liability at the hands of local government officials who do not work for the City—while giving the

2

An Attorney General Opinion issued in 2016 was not so silent. It concluded that private parties leasing government-owned facilities cannot make carriage of handguns on their leased property a crime by posting the familiar signage described by sections 30.06 and 30.07 of the Penal Code. Tex. Att'y Gen. Op. KP-0108, at 3 (2016). The AG Opinion went on, however, to address a key question that is entirely unaddressed by the State's filings—whether private parties leasing government property can exclude carriers of handguns by invoking the traditional authority of a tenant to control entry to the property and to exclude non-compliant visitors as trespassers. The Opinion concluded that a private party in such a position likely *could* prohibit guns in this way under Texas law. *Id.* at 3 n.2.

AG Opinion KP-0108 was recently withdrawn pending consideration of a related opinion request, RQ-0558-KP. But withdrawing the Opinion is not the same thing as repudiating its analysis or explaining why it was wrong, which the State has not attempted to do in this Court. If the AG Opinion was correct about the common-law authority of private parties who lease public property, then the privately operated State Fair may well have the authority to exclude handguns from the Fair, and this is the case *even if the State is completely right about the City of Dallas's obligations under section 411.209.* If the AG Opinion was wrong, then surely the party seeking a

law-abiding, gun-carrying public the misimpression that the courts have green-lighted their carriage of handguns at the Fair. To the extent the State advocates for such an ill-conceived half-measure, it does so unadvisedly.

3

result at odds with its own publicly stated opinion must at least explain why its opinion was wrong.

The State's filings obliquely suggest that there may be Second Amendment problems with the Fair's gun policy, but the suggestion is slight and indirect, and any such argument is not explained. Likewise, in its briefing to the court of appeals, the State alleged that the City of Dallas controls or influences the State Fair in various ways, insinuating that the State Fair's gun policy is actually the City's policy. Even accepting the State's factual allegations as true—which we are not obliged to do at this stage—the allegations that the City controls the Fair amount only to scattered and indeterminate financial connections between the entities, not the kind of control that would make the State Fair's decisions about guns imputable to the City. The State further alleged that the City appoints community members to the South Dallas/Fair Park Opportunity Fund Board, but the State failed to explain how that board is connected to the State Fair or how it may have influenced the Fair's gun policy, if at all.

While it is possible that future litigation could reveal that the City impermissibly controlled or influenced the State Fair's gun policy, it is not possible for an impartial court to conclude at this stage of the case that anything like that has happened. The factual landscape could certainly change as this litigation proceeds. But at this stage, every indication is that the State Fair's private board made its own decision to prohibit guns at this year's Fair. It should go without saying—though perhaps it cannot be said often enough—that a judge's role in this case is not to decide whether the State Fair made a wise decision. Our job,

4

instead, is to decide whether Texas law allowed the State Fair to make the decision for itself. The State declines to take a position on that essential question but nevertheless asks this Court for an injunction overriding the State Fair's decision. It should also go without saying that our answer, for now, must be no.

James D. Blacklock
Justice

**OPINION FILED:** September 26, 2024

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jeffrey Tillotson on behalf of Jeffrey M. Tillotson
Bar No. 20039200
swade@tillotsonlaw.com
Envelope ID: 109887723
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: Brief of the City Appellees
Status as of 1/9/2026 4:36 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Joseph AIrrobali | | airrobali@tillotsonlaw.com | 1/9/2026 4:22:37 PM | SENT |
| Bryan Neal | 788106 | Bryan.Neal@hklaw.com | 1/9/2026 4:22:37 PM | SENT |
| James Harris | 9065400 | jim.harris@hklaw.com | 1/9/2026 4:22:37 PM | SENT |
| Melissa Juarez | | melissa.juarez@oag.texas.gov | 1/9/2026 4:22:37 PM | SENT |
| Kira Lytle | | klytle@tillotsonlaw.com | 1/9/2026 4:22:37 PM | SENT |
| Sherri Rodgers | | sherri.rodgers@hklaw.com | 1/9/2026 4:22:37 PM | SENT |
| Ernest Garcia | | ernest.garcia@oag.texas.gov | 1/9/2026 4:22:37 PM | SENT |
| Catherine Hughes | | catherine.hughes@oag.texas.gov | 1/9/2026 4:22:37 PM | SENT |
| Nathaniel Buchheit | | nbuchheit@tillotsonlaw.com | 1/9/2026 4:22:37 PM | SENT |
| Paul Pruneda | | paul.pruneda@oag.texas.gov | 1/9/2026 4:22:37 PM | SENT |
| Megan Coker | | mcoker@tillotsonlaw.com | 1/9/2026 4:22:37 PM | SENT |
| Anne Johnson | | ajohnson@tillotsonlaw.com | 1/9/2026 4:22:37 PM | SENT |
| TJP Service | | tillotsonjohnsonpatton@gmail.com | 1/9/2026 4:22:37 PM | SENT |
| Meridith Fischer | | Meridith.Fischer@oag.texas.gov | 1/9/2026 4:22:37 PM | SENT |
| Connor Ellington | | connor@tonymcdonald.com | 1/9/2026 4:22:37 PM | SENT |
| Connor Ellington | | connor@tonymcdonald.com | 1/9/2026 4:22:37 PM | SENT |
| Connor Ellington | | connor@tonymcdonald.com | 1/9/2026 4:22:37 PM | SENT |
| Steven Ogle | | Steven.Ogle@oag.texas.gov | 1/9/2026 4:22:37 PM | SENT |
| Tony McDonald | | Tony@tonymcdonald.com | 1/9/2026 4:22:37 PM | SENT |
| Jeffrey Tillotson | 20039200 | jtillotson@tillotsonlaw.com | 1/9/2026 4:22:37 PM | SENT |
| Holly Dudrick | | holly.dudrick@oag.texas.gov | 1/9/2026 4:22:37 PM | SENT |
| William Cole | | William.Cole@oag.texas.gov | 1/9/2026 4:22:37 PM | SENT |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jeffrey Tillotson on behalf of Jeffrey M. Tillotson
Bar No. 20039200
swade@tillotsonlaw.com
Envelope ID: 109887723
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: Brief of the City Appellees
Status as of 1/9/2026 4:36 PM CST

Case Contacts

| William Cole | | William.Cole@oag.texas.gov | 1/9/2026 4:22:37 PM | SENT |
|---|---|---|---|---|
| William Peterson | | William.Peterson@oag.texas.gov | 1/9/2026 4:22:37 PM | SENT |
| Bryan Neal | | bryan.neal@hklaw.com | 1/9/2026 4:22:37 PM | SENT |
| Robert  B.Smith | | Robert@Smith-Firm.com | 1/9/2026 4:22:37 PM | SENT |
| Canon ParkerHill | | canon.hill@oag.texas.gov | 1/9/2026 4:22:37 PM | SENT |
| Devlin Browne | | dbrowne@tillotsonlaw.com | 1/9/2026 4:22:37 PM | SENT |
| Dina W.McKenney | | dina.mckenney@hklaw.com | 1/9/2026 4:22:37 PM | SENT |